Statement of Facts.

124 610
140 288
124 610
189 352
124 610
203 ¹584
124 610
217 ¹415

## BOROUGH OF MILFORD v. MILFORD WATER CO.

ERROR TO THE COURT OF COMMON PLEAS OF PIKE COUNTY.

Argued February 27, 1889—Decided March 18, 1889.

1. Under the provisions of § 66, act of March 31, 1860, P. L. 400, a borough ordinance contracting with a water company for a supply of water to the borough, enacted when a majority of the councilmen were stockholders in the water company, is illegal and void and no liability can be enforced thereon.

2. Nor will the fact that, for several years afterward the borough used and paid for water supplied under the contract, and that in some of those years, when the bills were passed, less than a majority, or none at all, of the councilmen were stockholders of the water company, constitute a ratification of such contract.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and MITCHELL, JJ.

No. 138 January Term 1889, Sup. Ct.; court below No. 3 October Term 1885, C. P.

To the number and term of the court below indicated, the Milford Water Company brought suit against the borough of Milford, declaring in the common counts in assumpsit. Issue.

At the trial of the case on June 7, 1888, it was shown: That on April 9, 1875, the borough council enacted ordinance No. 2, which was as follows:

"It is hereby ordained and enacted, by the chief burgess and town council of the borough of Milford, That from the day and date of the approval hereof, the said corporate officers of said borough offer and agree to pay the sum of three hundred dollars annually for the term of ten years to any company first applying that will furnish a proper, sufficient, suitable and permanent supply of water to the said borough, for the extinguishment of fires, cleaning the streets, and other public purposes during the said term. The said corporate officers reserve to themselves the privilege of placing the plugs and requisite attachments, and as many as they may deem necessary, which they agree to furnish at such points and distances within the corporate limits of the borough as they may see fit."

Charge of Court below.

That on June 17, 1875, the Milford Water Company adopted the following resolution:

"That we accept the offer of the borough of Milford to pay the water company that shall first apply for the same the sum of three hundred dollars annually, for the term of ten years, according to the terms of borough ordinance No. 2, of said borough, and that we hereby apply for the benefit of the same, and that the secretary notify the borough council hereof."

That, the resolution of the water company having been communicated, on January 25, 1876, the borough council adopted the following resolution:

"That the application of the Milford Water Company, as read, be hereby approved, and that the same be recorded at length, and that the said company be, and are hereby accepted by the borough of Milford, for the purposes of, and under and subject to the conditions contained in said borough ordinance, to wit, ordinance No. 2; and that the secretary be authorized and directed to notify said company of the same."

This action was communicated to the water company.

The other facts made to appear are fully shown in the charge to the jury, SEELY, P. J., which after reciting the foregoing ordinance and resolutions, proceeded:

The borough council proceeded to levy a water tax, and they paid over, from time to time, to the water company, the amount agreed upon for the use of the water. They connected hydrants with the mains of the water company, and for ten years, the period provided for by this ordinance, they collected the water tax, and for eight years they paid over to the water company the amount which it is alleged was agreed upon for the use of the water. In the spring of 1885 the borough refused to pay for the year which then expired.

In the year 1877, the borough of Milford gave notice, and adopted a resolution requiring the water company to extend their mains so as to supply water at the corner of Broad and John streets, and at the corner of Harford and Front streets. This demand of the borough was not complied with. In May, 1879, the borough council adopted a resolution requiring the water company to furnish a supply of water at the corner of Ann and Sixth streets, at the corner of Catherine and Fifth

streets, and at the corner of Harford and Front streets, and gave notice to the water company of this demand. The water company did not comply with this demand. In April, 1880, the borough council adopted a resolution requiring the water company to supply water at the corner of Catherine and Fifth streets, at the corner of John and Broad streets, and gave notice to the water company of this demand, and with this the water company did not comply.

Now we say to you that it was for the borough to determine whether water was required at those points, and they had a right to require the water company to furnish them a supply of water at the points named, and it was the duty of the water company, under their contract, to furnish that supply. That they did not do so was a failure on their part to comply with the terms and provisions of the contract which they had themselves entered into, and it was the privilege of the borough, when the water company refused to comply with these notices, to rescind their contract, because of the failure of the other party to perform. They could have rescinded this contract, and given notice to the water company that they would no longer take the water under its terms; that they would no longer recognize any obligation existing under that contract, or recognize the contract as existing between themselves and the water company in any manner. Whether it would be necessary, or not, that they should go further, and cut off their hydrants from connection with the mains of the water company it is not necessary to consider, now, because they took no steps to rescind that contract. They gave no notice to the water company of an intention on their part to release the water company from any obligation to supply water, nor to indicate a purpose on their part to discontinue the use of the water from that time.

The borough could not continue to use the water, and to insist upon receiving the benefits of a contract which they had entered into, and then refuse to pay for the water. They must do one thing or the other. They must recognize this contract as existing, and involving an obligation upon both parties, or else declare this contract at an end, releasing both parties from its obligations. If it remained a contract for one party, it remained a contract for both parties. The benefit to the borough

did not depend upon the quantity of water actually used. Whether the borough should pay the consideration named in this contract or not, does not depend upon the question whether fires occurred in the borough during the year, nor whether they actually had occasion . to use this water or not. The borough might have been free from fires for years, and may not have had occasion to draw a drop of water from these hydrants for years; but so long as by their contract they could require the water company to maintain a supply of water at these points, in order that it might be available in case a fire should occur, they were deriving a benefit to which they were entitled under the contract, and they were bound to pay for that benefit. So that, so far as this year is concerned, it is not material to inquire whether there was a fire, or any actual use for the water or not. The question is, did the parties continue in the same relation this year as they did before? Was the water company required by this contract to furnish a supply of water for those hydrants, and did they do so? There seems to be no question about that. It was only at the end of this year that the borough notified the water company that they would not use the water, and that they would not pay for it.

The plaintiff's counsel have submitted certain points in writing, asking us to charge you:

1. The continued use of the water by the defendant under the contract with the plaintiff, without rescinding the same and notifying plaintiff, is an admission on the part of defendant of a substantial compliance with the contract on the part of the plaintiff.

Answer: We affirm this point so far as to say that the continued use of the water was so far a recognition of the continuing force of the contract as to render the borough liable under the terms of the contract.[1]

2. If the jury believe from the evidence that water was used from, and fire plugs attached to plaintiff's mains for nine years, and payment for said use made by defendant for eight years, then defendants have accepted the performance of the contract on the part of the plaintiff.

Answer: We affirm this proposition to the same extent, that by this use the borough still recognized the contract, and was required to pay for the water. The only hesitation we have

about the full affirmance of the point is this expression, "the defendants have accepted the performance of the contract." They have, so far as relates to the purposes of this case.[2]

3. If the jury believe from the evidence that defendant used the water of the plaintiff under this contract for eight years, and paid for said use, and continued to use said water under said contract during the year for which suit was brought, and attached fire plugs to plaintiff's mains during that year, the defendant cannot now set up want of compliance with the contract, and the plaintiff would be entitled to recover.

Answer: We affirm this point.[3]

The defendant's counsel have also submitted certain points in writing, requesting us to charge you:

1. That the plaintiffs, if they recover at all, can only do so by virtue of the ordinance and acceptance of it, and not by virtue of any implied contract.

Answer: That point we affirm.

2. That under the provisions of ordinance No. 2, the water company are bound to furnish a supply of water for the extinguishment of fires, cleaning the streets, and other public purposes, and for the supply of fire plugs at such places as the borough officers deem necessary. If the jury find that the water company failed to do this, they violated their contract, and the borough had a right at any time to refuse further payment.

Answer: We refuse this point, if it means that the borough at any time had a right to refuse payment for services already rendered by the water company. We affirm it, if it means that the borough had at any time a right to rescind this contract and give notice to the water company, and then refuse further payment.[4]

3. That inasmuch as the plaintiff company claim to recover under a special contract, it is incumbent on them to show that they have fulfilled their part of the contract, and if the jury find that they have not done so, they cannot recover, and the verdict must be for the defendant.

Answer: We decline to affirm this proposition.[5]

4. That inasmuch as it appears from the records of the borough, and of the water company, and is uncontradicted, that a majority of the borough officers, chief burgess, and town

council, at the time of the passage of ordinance No. 2, were officers and stockholders of the water company, at the time of their acceptance of the ordinance completing the contract, the contract was against public policy, in contravention of the act of assembly, and void, and the plaintiff cannot recover and the verdict must be for the defendant.

Answer: At present we refuse this point. We propose to reserve this question for further consideration.[6]

5. That if the contract was void for the reasons set forth in the last point, any acquiescence on the part of the officers of the borough thereafter, either by paying money or using water, could not restore its validity so as to enable the water company to enforce it, but a new contract, made by parties who could legally contract was necessary before this action could be sustained.

Answer: We refuse this point, for the present, because it is embraced within the question which we propose to reserve for further consideration.[7]

6. That under all the evidence in the case the verdict must be for the defendant.

Answer: We refuse this point.[8]

A question has arisen in this case to which we desire to give more careful consideration than is possible at present, and that question we shall reserve for further consideration, reserving it upon certain facts as agreed to by counsel for plaintiff and defendant, which we will now read to you, and which will be made a part of your verdict. These facts are as follows:

The offices of chief burgess and town council of the borough of Milford, from year to year, from 1875 to 1885 inclusive, have been filled by the persons named in the records of the borough, as proven in evidence. The list of subscribers to the capital stock of the water company, and of shareholders, and of the officers of the water company, from year to year, for the same period, have been proven in evidence. Also that the following persons ceased to be stockholders from the dates named: . . . . The dates of the meetings for organization of the borough councils for the years 1876, 1878, 1879, and 1884, have been proven in evidence from the records of the borough. The resolution of the council of April 7, 1875, offering to pay for a supply of water, the proposition of

the water company, and its acceptance by the borough council have been proven in evidence. The resolution of the council relating to the supply of water, and the compensation to be paid; the resolutions directing payment to the water company from time to time, of certain sums for water rent; directing payment for expenses of putting in hydrants, and of the expenses connected with the supply and use of the water, have been proven in evidence, showing the dates of such resolutions, and who was present at the meetings of the town council when they were adopted; that the water tax was levied and collected for ten years, including the years 1884 and 1885, and was paid to the water company for eight years. Notices were served upon the water company in pursuance of resolution of the town council of July, 1877, May, 1879, and April, 1880, requiring the water company to furnish a supply of water at certain points named. Water was not furnished in pursuance of such notices. As to all the above matters no controversy exists, and upon the agreement of counsel we reserve upon the facts above stated, the question whether the contract which is asserted as the basis of this action was a valid existing contract by which the water company was required to supply, and the borough to pay for the use of water for the year from April 1, 1884, to April 1, 1885. This question, involving the question whether the alleged contract was void as against public policy, or as in contravention of the act of March 31, 1860, § 66, and whether the same has been subsequently ratified, or in any way rendered valid or invalid, is reserved, with power to the court to enter judgment, non obstante veredicto, if, upon consideration of the facts above referred to, it shall be of opinion that no valid contract existed requiring the defendant to pay for the use of the water for the period mentioned.

You will thus see that the matter to be submitted to you is relieved of all difficulty, and this mass of evidence, which perhaps seemed very confusing, at the time, is to a very large extent brushed away. [You have a contract by which the water company agreed to supply water for the use of the borough, for certain purposes, for which the borough agreed to pay the sum of $300 annually. The contract was not in all respects complied with by the water company, but there have

been no steps taken by the borough toward the rescission of this contract up to and during the years 1884 and 1885, so far as the evidence shows.   The borough accepted the use of the water, and enjoyed the benefits of the contract.   And we say to you as a matter of law, under these circumstances, that the water company is entitled to recover the sum of $300 with interest from April 1, 1885.] ⁹   The question of the validity of the contract itself, which has been considered here, is one that we will hereafter consider, and we reserve the right to enter judgment for the defendant, notwithstanding the verdict which you will render in favor of the plaintiff.

The jury returned a verdict for the plaintiff for an amount which did not appear in the paper books, the question of the validity of the contract upon which recovery was sought being reserved.   On November 8, 1888, the court, SEELY, P. J., filed the opinion following:

When, in 1875, and January, 1876, the alleged agreement between these parties was made, by which upon distinctly stated terms the plaintiff was to furnish for a period of ten years, a supply of water for the purposes of said borough, and the defendant was to pay therefor the sum of three hundred dollars per year, the chief burgess of the borough of Milford and two of the councilmen were officers and another of the councilmen was a stockholder of the Milford Water Company, leaving only two members of the borough council who were not interested in said water company.

The act of March 31, 1860, § 66, P. L. 400, prescribes that no member of any corporation or public institution, or any officer or agent thereof shall be in any wise interested in any contract for the sale or furnishing of any supplies or materials to be furnished to or for the use of any corporation, municipality or public institution of which he shall be a member or officer, or for which he shall be an agent, nor directly nor indirectly interested therein, under penalty of forfeiting his office, and being held guilty of a misdemeanor.

By the special verdict and judgment under which the question was reserved it appears, that for the year beginning in April, 1876, the chief burgess and one councilman were managers and two councilmen were stockholders of the water com-

pany. For the year 1877, the chief burgess and one of the councilmen of the borough were stockholders of the water company. For the year 1878, the chief burgess and one councilman were managers, and one councilman was a stockholder in the water company. For the year 1879, one councilman was a manager and another was a stockholder of the water company. For the years 1880 and 1881, no officer or stockholder of the water company appears to have been connected with the borough council. For the year 1882, the chief burgess and one of the councilmen were officers of the water company. For the year 1883, one of the councilmen was a stockholder in the water company. For the years 1884 and 1885, no member of the borough council was in any way interested in the water company, until March 2, 1885, when a stockholder in the water company was appointed to fill a vacancy occasioned by the resignation of one of the councilmen. During this entire period of time the alleged contract was recognized and treated as a valid contract between the parties. The borough received a supply of water from the water company, levied and collected a tax to cover the consideration of the contract every year, and paid it to the water company every year until this last year for which suit was brought. The borough from time to time adopted resolutions requiring the water company to extend their mains in accordance with the terms of this contract as the borough construed it, and notified the water company of such requirements, and this in 1877 and 1879, when but two members of the council were in any way connected with the water company, and in 1880, when no member of the council was so interested.

It is argued that this contract was against public policy and therefore absolutely void, so that it could in no way be ratified or made valid.

We do not think that such a contract would be void because one or two members of the borough council were also interested in the water company, but when as in the year 1875, a majority of the borough council was composed of managers and stockholders of the water company, we think public policy as declared by the act of March 31, 1860, forbade them to enter into this contract.

But in what respect was the contract against public policy?

Not by reason of anything in the subject matter of the contract or of any of its terms or provisions. Nothing forbade that this water company and borough should contract with each other for just the purposes and upon the same terms as set forth in the resolutions to which they gave their assent. The vice of the transaction is found in the relation which the contracting parties sustained to each other; that the water company possessed a controlling voice in the borough council at the time the agreement was entered into.

The case is by no means like that of Mitchell v. Smith, 1 Binn. 110, where the thing agreed to was and must always remain unlawful. It is more nearly analogous to that of Commonwealth v. Commissioners, 2 S. & R. 193, yet differs from that in some material respects. That was an agreement for a purchase of chairs, beginning and ending in a single transaction. This was a continuing contract for services to be rendered and paid for from year to year for a period of ten years. That agreement was never recognized after the fatal objection was removed. The court held in that case that the property in the chairs had never passed from the original owner. If the commissioners had insisted upon retaining the chairs after Taylor had ceased to hold office as commissioner, had asserted in behalf of the county the ownership of the property and refused to deliver up possession until the property had been destroyed or so damaged as to become worthless, a very different question would have been presented.

In the present case, the agreement was asserted by both parties for a period of nine years, including the year for which recovery is sought, recognized and asserted, and the benefits of it enjoyed by both parties when the objection arising out of the relation to the parties had ceased to exist; and, whether we call it ratification of the old contract or an adoption of it, the invigorating of a flickering, uncertain life before existing, or the imparting of vitality to that which before possessed none, both the parties having insisted upon this agreement, and each having continued, when no legal objection to their contracting existed, to assert this agreement against the other, and each to require of the other compliance with it according to its terms, the borough cannot now excuse itself from paying for benefits actually received in the years 1884–5, by reason of

the fault which existed in 1875–6, when the terms of the agreement first received the assent of the parties.

If these parties could at any time enter into a new contract upon the precise terms of the old, we fail to perceive why they could not adopt the old contract as expressive of the mutual obligations by which they would be governed; and, when the borough council by resolution regularly passed, and communicated to the water company, required that company to do certain things, because stipulated in that contract, and continued to attach hydrants to the mains of the water company, it was the highest possible expression of their recognition and adoption of the terms of this agreement.

Now, November 8, 1888, we determine the reserved question in favor of the plaintiff, and direct that judgment be entered in their favor against the defendant, upon the verdict of the jury.

Judgment having been entered, the defendant borough took this writ, assigning as error:

1–3. The answers to the plaintiff's points.[1 to 3]

4–8. The answers to the defendant's points.[4 to 8]

9. The part of the charge embraced in [ ][9]

10. The order directing judgment for the plaintiff on the point reserved.

*Mr. H. Wilson* and *Mr. D. M. Van Auken,* for the plaintiff in error:

1. A majority of the members of the borough council being stockholders in the water company when they made the contract sought to be enforced, the contract was in violation of § 66, act of March 31, 1860, P. L. 400. Where a statute inflicts a penalty for the doing of an act, it implies a prohibition, and a contract in violation of it cannot be enforced: Seidenbender v. Charles, 4 S. & R. 151; Columbia Bank & Bridge Co. v. Haldeman, 7 W. & S. 233; Morris Run Coal Co. v. Barclay Coal Co., 68 Pa. 173. Thus the contract was void in its inception, for want of competent parties.

2. The ratification of a void contract is unknown to the law. If a new contract, free from the taint of the original, be made to take its place, the new contract must stand by itself and can

have no support from any connection with or relation to the void contract. Moreover, it must be an express contract. There can be no such thing as an implied contract to carry out the terms of a void contract. But whether the contract sued on was valid or not, the water company had not complied with its terms. The contract was an entirety, and full performance of all its requirements was necessary to entitle the company to recover. Its partial failure on this point was admitted, and a partial failure was as fatal to its claim as an entire failure would have been.

*Mr. J. H. Van Etten,* for the defendant in error:

1. In Seidenbender v. Charles, 4 S. & R. 151, and Columbia Bank & Bridge Co. v. Haldeman, 7 W. & S. 233, the contracts showed on their faces illegal transactions recited as the considerations. In Morris Run Coal Co. v. Barclay Coal Co., 68 Pa. 173, the agreement between the five coal corporations, was in restraint of trade and employment and hence injurious to the public interest. But in the case in hand there was no vice in the contract, and it was not against public policy.

2. The people of the borough enjoyed the benefit of the water supplied for the whole time for which the suit was brought. One who has enjoyed a privilege has no right to say that because he ought not to have enjoyed it, he will not pay for it. However unlawful the act, it would be unsound policy to grant such immunity: Northampton Co.'s App., 30 Pa. 305; Lestapies v. Ingraham, 5 Pa. 71; Fox v. Cash, 11 Pa. 207.

3. A contract tainted with fraud may be confirmed or ratified without a new contract founded on a new consideration; for, a ratification is in general the adoption of a previously formed contract notwithstanding a vice that rendered it relatively void: Pearsoll v. Chapin, 44 Pa. 9; Negley v. Lindsay, 67 Pa. 217; Shisler v. Vandike, 92 Pa. 447. The continued attaching of hydrants and payment of the amount due the water company, without protest or complaint by the council, was an affirmance and ratification of the contract.

4. Where neither party has insisted on the strict performance of a continuing contract it is not competent for one of them to rescind, without notice of an intention to insist on a literal compliance by the other: Forsyth v. Oil Co., 53 Pa.

168 ; and a substantial performance by one party is sufficient, where the other party has received the fruit of the labor performed : Preston v. Finney, 2 W. & S. 53 ; Truesdale v. Watts, 12 Pa. 73 ; Morgan v. McKee, 77 Pa. 228.

OPINION, MR. CHIEF JUSTICE PAXSON :

The contract between the Milford Water Company, plaintiff below, and the borough of Milford, defendant, is a valid and binding contract, provided ordinance No. 2 of said borough, passed April 9, 1875, is a valid ordinance. Just here is the pinch of the plaintiff's case.

It is not denied that when the ordinance was passed a majority of councils were also directors of the water company. They were thus contracting with themselves to supply the borough with water. The 66th section of the act of March 31, 1860, P. L. 400, provides that " It shall not be lawful for any councilman, burgess, trustee, manager, or director of any corporation, municipality, or public institution, to be at the same time a treasurer, secretary, or other officer, subordinate to the president and directors, who shall receive a salary therefrom, or be the surety of such officer ; nor shall any member of any corporation or public institution, or any officer or agent thereof, be in anywise interested in any contract for the sale or furnishing of any supplies, or materials to be furnished to, or for the use of any corporation, municipality, or public institution, of which he shall be a member or officer, or for which he shall be an agent, nor directly nor indirectly interested therein, nor receive any reward or gratuity from any person interested in such contract or sale ; and any person violating these provisions, or either of them, shall forfeit his membership in such corporation, municipality, or institution, and his office or appointment thereunder, and shall be held guilty of a misdemeanor, and on conviction thereof be sentenced to pay a fine not exceeding five hundred dollars," etc.

I have quoted this section at length as I very much fear it is not as widely known as it ought to be, nor as generally observed. It is at least probable the members of the borough councils, who were at the same time members of the water company, overlooked this statute when they voted for and passed the ordinance in question, otherwise they must have

known they were not only making a void contract, but also subjecting themselves to a criminal prosecution. It is almost needless to say that a contract so prohibited by law is utterly void, and there is no power that can breathe life into such a dead thing.

It appeared, however, upon the trial below, that the borough had been using and paying for this water for several years; that upon some occasions when the bills were passed there was less than a majority of councils who were members of the water company, and some years in which there were no members of councils who were also members of said company. From this it was urged that there was a ratification of the contract by councils. The learned judge below adopted this view, and entered judgment non obstante on the verdict in favor of the water company. This will not do.

There was no ratification of the contract because there was no contract to ratify. The water company never contracted with the borough. They contracted with themselves to supply the latter with water; to that agreement the borough was not a party in a legal sense. It is true, the borough might, after its councils had become purged of the members of the water company, have passed an ordinance similar to ordinance No. 2, and thus have entered into a new contract. But no such ordinance was passed, and neither councils nor the officers of the municipality can contract in any other way. It is one of the safeguards of municipal corporations that they can only be bound by a contract authorized by an ordinance duly passed. The act of 1860 is another and a valuable safeguard thrown around municipalities. It was passed to protect the people from the frauds of their own servants and agents. It may be there was no fraud actual or intended in the present case, but we will not allow it to be made an entering wedge to destroy the act of 1860. Of what possible use would that act be if its violations are condoned, and its prohibited, criminally condemned contracts allowed to be enforced under the guise of an implied ratification? It is too plain for argument that the payment by councils for some years for water actually furnished created no contract to accept and pay for it in the future. Nor was this suit brought upon any such implied contract. On the contrary it was brought upon the contract authorized by ordinance No. 2; it has noth-

ing else to rest upon, and with the destruction of its foundation the superstructure crumbles.

> The judgment is reversed, and judgment is now entered for the defendant below non obstante veredicto.