#### IN THE

# APPELLATE COURT

#### OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, NOVEMBER TERM, 1901, IN THE EIGHTY-FIFTH AND EIGHTY-SIXTH YEARS OF THE STATE.

---

SWIFT & COMPANY *v*. DYER-VEATCH COMPANY ET AL.

[No. 3,696. Filed November 26, 1901.]

CORPORATIONS.—*Insolvency.*—*Mortgage to Secure Directors.*—A mortgage of all the property of an insolvent corporation by three of its directors, securing debts for which such directors were surety, is void, where the mortgage was not authorized by a quorum of the board of directors, a majority of which quorum not being liable as sureties.

From Vanderburgh Superior Court; *J. H. Foster*, Judge.

Action by Swift & Co. against Dyer-Veatch Co. and others to set aside a mortgage. From a judgment for defendants, plaintiff appeals. *Reversed.*

*G. A. Cunningham*, for appellant.

*A. Gilchrist, C. A. DeBruler* and *P. W. Frey*, for appellees.

ROBY, J.—A demurrer for want of facts was sustained to appellant's complaint, and the correctness of the ruling

is duly challenged here. The amended complaint avers that: "The defendant The Dyer-Veatch Company is a corporation organized under the laws of the State of Indiana, for the purpose of buying and selling merchandise and conducting mercantile operations; that until a short time prior to the execution of the mortgage hereinafter set out the said Dyer-Veatch Company was engaged in the business of buying and selling merchandise and conducting mercantile operations in the city of Evansville, county of Vanderburgh, and State of Indiana; that on the 26th day of September, 1896, in the superior court of Vanderburgh county, in an action therein pending, wherein Swift & Company was plaintiff, and The Dyer-Veatch Company was defendant, the plaintiff recovered a judgment against the said Dyer-Veatch Company for the sum of $1,145.82, which is wholly unpaid; that the indebtedness for which said judgment was rendered was contracted prior to the 4th day of August, 1896; that on or about the 4th day of August, 1896, and for several weeks prior thereto, the said Dyer-Veatch Company was wholly insolvent, and did not have sufficient property with which to pay its debts, which fact was well known to all of the defendants; that on said last named day, and for at least a year prior thereto, the defendants, Harry Veatch, Elwood T. Moore, and John Griess, Jr., were directors of said Dyer-Veatch Company; that on said 4th day of August, 1896, the said Dyer-Veatch Company executed and delivered to its codefendant, the Old National Bank of Evansville, Indiana, a mortgage which is in words and figures following, to wit: Know all men by these presents, that the Dyer-Veatch Company, a corporation organized under the laws of the State of Indiana, and having its principal place of business at Evansville, Indiana, in consideration of the sum of $1 to it in hand paid by the Old National Bank of Evansville, Indiana, and for securing the payment of the notes hereinafter mentioned, has granted, bargained, and sold, and by these

Swift & Co  *v.* Dyer-Veatch Co.

presents does grant, bargain, and sell unto the Old National Bank of Evansville, Indiana, all the goods, wares, and merchandise, consisting of molasses, seeds, meats, and other provisions, bags, sacks, burlaps, barrels, casks, kegs, boxes, crates, twine, packing paper, and all other goods, wares and merchandise of every kind and description in or about the building now occupied by said Dyer-Veatch Company and which belongs to Adolph Goeke, and which is situated on the corner of .Elsas avenue and Division street in the city of Evansville; also all tools and machinery in or about said building of every kind and a heating apparatus, boiler and engine, molasses vats, and pipe, and all machinery of every kind in or about said building; also all office fixtures and furniture of every kind in or about said building, also one dark brown mule, one gray pony, one bay horse, two dark brown mares, one double dray, one single wagon, one double dray harness, one single dray harness, one single wagon harness, one single buggy harness, one two-seated buggy, two tarpaulins, which are now in or about said building and the stable on said premises and which are used in the business of said Dyer-Veatch Company, and also all other goods and chattels of every kind and description belonging to said Dyer-Veatch Company, and which are in or about the building hereinafter described.   And for the same consideration said Dyer-Veatch Company hereby assigns and transfers to said Old National Bank of Evansville, Indiana, all accounts, notes, claims, and choses in action of every kind and description owing by any person or parties whatsoever to said Dyer-Veatch Company; the same to belong to said Old National Bank absolutely, and the said Dyer-Veatch Company hereby authorizes said Old National Bank to collect all said accounts, notes, claims, and choses in action in its own name or in the name of said Dyer-Veatch Company, or otherwise, as said bank may be advised.   This sale of the property herein described and the assignment and transfer of the

accounts, notes, claims, and choses in action is made to se-
cure the payment of the following described nine notes,
each of said notes being made by the Dyer-Veatch Company
and by Harry Veatch, John Griess, Jr., and F. T. Moore,
payable to the order of the Old National Bank with five per
cent. attorney's fees and with interest at eight per cent. per
annum after maturity and until paid.   Each of said notes
is for the sum of $1,000, and is payable thirty days after
its date, and said notes are dated respectively as follows:
Three of said notes are dated the 3rd day of July, 1896;
two of said notes are dated the 11th day of July, 1896;
one of said notes is dated the 14th day of July, 1896; one
of said notes is dated the 18th day of July, 1896, and two
of said notes are dated the 23rd of July, 1896.   The said
Dyer-Veatch Company promises to pay each of the notes
herein mentioned, together with interest and attorney's fees.
It is further agreed that the mortgagee, said Old National
Bank, may at once take possession of all the property
hereby sold, assigned, and transferred to it, and said Dyer-
Veatch Company hereby authorizes said Old National Bank
to take immediate possession of all said property, and hereby
delivers the possession of all said property to said Old
National Bank, and upon any default in payment of the
notes herein described or of any of said notes, said mort-
gagee is hereby authorized to sell and dispose of all said
property at public or private sale, and from the proceeds
thereof to pay the notes herein described, and interest
and attorney's fees on the same.   *   *   *   That the in-
debtedness secured by said mortgage was all contracted prior
to the 1st day of January, 1896, and no part of the con-
sideration therefor was money loaned to the said company
at the date of the execution of said mortgage; that the de-
fendants, Harry Veatch, John Griess, Jr., and Elwood T.
Moore, the directors of said company, were sureties upon all
of the said notes and debts secured by said mortgage; that
the said Dyer-Veatch Company did not have at the time of

the execution of said mortgage any property subject to execution, nor has it since had any other property subject to execution, except that described in said mortgage; that at the time of the execution of said mortgage the said Dyer-Veatch Company had ceased to be a going concern and had practically discontinued its business, and the said mortgage was executed with full knowledge on the part of the directors and officers of said company and of the said mortgagee that the said mortgagor company had ceased to be a going concern and had practically ceased to do business, and with the full intention on their part that upon the execution of said mortgage the entire assets of said company embraced therein should be turned over to the said mortgagee, and the said mortgagor company should thereafter cease to do business of any kind; that in pursuance of said mortgagee, and the intention of the parties as aforesaid all of the property described in said mortgage was immediately upon the execution thereof delivered to the defendant, the Old National Bank of Evansville, Indiana, and the said Old National Bank proceeded to sell said property and collect the choses in action described in said mortgage, and now has the proceeds in its possession; that the property so transferred to the said mortgagee was of the value of $5,000, and was the property of said mortgagor."

The question for decision is not as to the right of a corporation to prefer creditors, nor yet as to its right to prefer creditors whose claims are secured by the personal obligation of some of the directors. The question is not indeed one of preference at all. It is one of power. The preference of creditors by individuals is an infirmity of law, "tolerated but not encouraged." Bump on Fraud. Con., 386. The right has been extended to corporations in Indiana. Its basis is found in the diligence of the creditor, and as between creditors who are slothful and those who are vigilant there is some reason for it. The race for preference is between the creditors. The debtor presuma-

bly occupies an impartial position which enables him to decide and to determine who is the winner of the race, and to make his preference accordingly. The complaint shows that "the directors of said company were sureties upon all the notes and debts secured by said mortgage." The averment is not otherwise made in terms that the board consisted of only three persons, but no greater number is required. §5054 Burns 1901. And under the well established rule, that one who occupies a position of known superiority, and by means of it secures an advantage, must, when the transaction is attacked affirmatively, show fairness and good faith, the complaint is sufficient to raise a presumption against the directors named and to put the burden upon them of showing, if such were the fact, that the mortgage was authorized by the votes of other directors than themselves. It is essential that the majority of a quorum of a board of directors shall be disinterested in respect to matters voted upon. *Miner* v. *Belle Isle Ice Co.,* 93 Mich. 97, 53 N. W. 218, 17 L. R. A. 412; *Milford* v. *Milford Water Co.,* 124 Pa. St. 610, 17 Atl. 185, 3 L. R. A. 122; 2 Cook on Corp., 692.

As against the corporation or its stockholders, the action of a board of directors transferring all the corporation assets to the individual members of the board would be absolutely void; no one would suspect such a performance of any validity. In the case at bar the directors are in effect charged with having done an equivalent thing. 2 Cook on Corp., 693. The corporation represented and owned as it is does not question the transaction. Can the creditors do so?

The directors acted without any authority, and the corporation was not bound by their acts. No question of ratification is presented; the agent having no authority to act for the corporation in making such transfer as has been attempted, it follows that in the absence of a ratification by the corporation, or an election to treat as valid by the creditors, that the creditors have lost no right to subject cor-

porate property to the payment of corporate debts. The matter resolves itself into a question of common honesty. Certain individuals organize a corporation, its capital is fixed at a specified sum, which the incorporators are required to pay in within a specified time. Directors are selected who manage the affairs of the company and upon whose judgment and integrity its success depends. Credit is extended to the corporation upon the strength of its assets and financial condition. The statute requires that the stock books shall be kept subject to the inspection of creditors. §3433 Burns 1901. Within twenty days after the 1st of January in each year a majority of the directors are required to make oath to and publish a statement of the amount of capital, the amount of assessments made and actually paid in and the amount of existing debts. §5071 Burns 1901. The directors are made liable to any person misled and damaged by failure to make such report or by the making of an incorrect one. §5073 Burns 1901. They are made liable to creditors for declaring and paying a dividend when the company is insolvent or for rendering it insolvent thereby. §5075 Burns 1901. The policy of the law as indicated by the statutes referred to is to give information and means of information to creditors of the corporation, or those about to become its creditors, of its financial situation.

The directors selected proceed to conduct the business of the corporation; the result of their management is that the capital stock is dissipated. They negotiate a loan; the persons making it, unlike the sellers of merchandise, require security, and the individuals constituting the board of directors sign the notes. The money thus borrowed enables the corporation to meet obligations to continue and enlarge its credits. The insolvency and impending bankruptcy are known to the directors; having it in view they proceed so to arrange by virtue of mortgages, bills of sale, and other devices as that the burden of the failure shall fall upon the

creditors, while the originators of the enterprise lose little and often nothing at all. To permit such a proceeding is to countenance fraud and to make it easy of accomplishment.

Judgment reversed, cause remanded, with instructions to overrule demurrer to complaint and further proceedings not inconsistent herewith.

Comstock, C. J., Black and Robinson, JJ., concur. Henley and Wiley, JJ., dissent.

## DISSENTING OPINION.

WILEY, J.—I am unable to agree with either the reasoning or the conclusion reached by my associates in the prevailing opinion. My reasons for disagreeing are twofold: (1) The decision, in my judgment, is in direct conflict with the ruling precedents of the Supreme Court as established in the following cases: *Henderson* v. *Indiana Trust Co.,* 143 Ind. 561; *Levering* v. *Bimel,* 146 Ind. 545; *First Nat. Bank* v. *Dovetail, etc., Co.,* 143 Ind. 550, 52 Am. St. 435.

These cases all declare that a corporation, like an individual, may prefer its creditors. There is no reason, resting upon a solid foundation, or broad legal principle, why such preference may not be made. Corporations, like individuals, may contract, may sue and be sued, and persons dealing with them are bound to know that they may exercise the rights of individuals. (2) The doctrine announced in the cases cited is the law of this State, and as such this court is bound to follow it, unless we are of the opinion that "a ruling precedent of the Supreme Court is erroneous," in which event the case must be transferred to the Supreme Court, with our reason for such opinion. If I fully understand the force and effect of the prevailing opinion in this case, it is to declare a radically contrary doctrine to that established by the Supreme Court, and this we have no right to do. So it follows that as a majority of my associates are of the opinion that the ruling precedent of the Supreme Court, as estab-

lished in the cases cited, is erroneous, this cause should have been transferred to that court.

In conclusion, it is sufficient for me to say that I am in full accord with the rule which the Supreme Court has established, and with the reasoning and principles announced in the dissenting opinion of Henley, J., in *Nappanee, etc., Co.* v. *Reed* (Ind. App.), 60 N. E. 1068. If the rule is wrong, the fault is with the legislature, and not the courts.