## BABCOCK VS. THE CITY OF HELENA.

1. MUNICIPAL CORPORATIONS: *Effect of act of the ninth of April,* 1869. Sec. 9 of the act of April 9, 1869, for the incorporation, etc., of cities and towns (*sec.* 3202, *Gantt's Dig.*), clearly indicates an intention of the legislative body to produce a strict conformity in the organization and government of all the cities and towns in the state, each after its class; but did not mean to take away any special powers theretofore granted them by special acts, and not affecting their organization or government.

·2. STATUTES: *Repeal of, by implication.*
Repeal of statutes by implication must be necessary, or, at least, arise from a clear and unmistakable intention.

APPEAL from *Phillips* Circuit Court.
Hon. J. N. CYPERT, Circuit Judge.
*Kimball,* for appellant.
*Brown, contra.*

EAKIN, J. This suit was begun by appellant, before a justice of the peace, upon a coupon for $20 of a $500 bond, issued by the city of Helena, in favor of the Arkansas Central Railway company, on the first of October, 1872.

Upon trial, upon appeal to the circuit court, it was agreed that, in the year 1870, the city, by ordinance, submitted the question to a vote of the people, and the vote was in favor of a subscription to the stock of said railway company. The bond in question was one of those issued in conformity with said vote; and the coupon sued upon came into the hands of complainant, before maturity, for value, and in due course of trade; upon which the judge, against the objections of complainant, declared the law to be: that, at said date, the city had no authority to subscribe stock to

said road, or to issue said bonds; and that they and the coupons were void.

There was judgment for the defendant, from which the plaintiff appealed. The evidence and instructions are shown by bill of exceptions.

The city of Helena was chartered by act of December 5, 1856. Amongst other powers granted to the city council, was that of levying such taxes as might "be authorized by a majority of the voters of said city, qualified, etc., voting at special elections, held for that purpose, for the payment, of stock subscribed on behalf of said city, by said council, or a majority thereof, in any railroad," etc.

On the sixth of February, 1867, the legislature, in an act "to aid in the construction of the Iron Mountain and Helena railroad, and for other purposes," provided, "that if the city of Helena has, or may hereafter vote to take, stock in the Iron Mountain and Helena railroad, or any other road beginning or terminating at said city, the mayor, by the consent of the council, may issue the coupon bonds of the city."

The constitution of 1868, *Art. V, sec. 49*, made it obligatory upon the general assembly to "provide for the organization of cities and incorporated villages by general laws," and "to *restrict* their power of taxation, assessment, borrowing money, contracting debts and loaning their credit, so as to prevent the abuse of such power." The same constitution continued in force all laws consistent with its provisions. It is obvious that all existing corporations, with all their powers, were carried over and continued until the general assembly might choose to restrict their powers. This clause was *directory*. It was not self-executing, and no restrictions were imposed by it whatever. The general assembly was directed hereafter to impose such as, in its

judgment, might be proper.   We must look to subsequent legislation for such restrictions, and their extent.

The first general assembly which sat under this constitution, on the twenty-third day of July, 1868, passed a prospective act for the incorporation of cities and towns, which did not attempt to interfere with any powers of existing corporations—merely extending to them the privilege of surrendering their charters, and accepting corporate character, and authority, under said general act.   The city of Helena did not do that, and still retained its powers unimpaired.

Another general act for the incorporation, classification, and government of cities and towns, was passed on the ninth of April, 1869.   This act took into its scope and purview all corporations which were in existence when said constitution was adopted, classing them, and continuing their corporate existence under the new act, with their old territorial limits (*Gantt's Digest. sec. 3201*), and providing further (*sec. 3202*) that "all acts now in force *for the organization or government* of any such municipal government or corporation, shall be and they are hereby repealed. Provided that such repeal shall not destroy or bar any right of property, action or prosecution which may be vested or exist at the time this act takes effect." It is to be observed that, then, no right of property, action, or prosecution, had vested, either in the said railway, or said city.   The ordinance for submitting to the vote of the people, the question of subscribing for stock in said railway was not passed until the next year.

The original charter of Helena was doubtless repealed by said act of 1869, and she became classed and continued her organization under said last named act, which afforded the measure of her *general* powers, and the restrictions

upon them. Our attention has not been called to, nor have we observed, any clause in the last named general act which *expressly* limits, or denies to pre-existing corporations, special powers theretofore conferred by special acts. If such be the effect of the act of 1869, it must result from its general intent. Its language does not repeal the act of February 6, 1867; for in no proper sense can the latter be considered an act for either the *organization* or the government of the city of Helena. It had been already organized, and its organization was in no wise changed. Nor is it easily conceivable how the power to subscribe stock affected the government of the corporation. This clause clearly indicates an intention of the legislative body to produce a strict uniformity in the organization and government of all the cities and towns in the state, each after its class, but there is no warrant for going further, and presuming that the legislature meant to take away any special powers, theretofore granted them by special acts, and not affecting their organization or government.

The city of Helena is a very important port, or landing, upon the great river which connects our state with the commerce of the world. The citizens of a very large area of the state are interested in having ready access to that point, for themselves, and their products. Previous legislation had seemed to recognize the advantage to the state of a concentration of railroads there; and had indicated the policy of allowing the city to encourage them by subscriptions of stock. We can not suppose that these things were unknown to, or overlooked by, the general assembly of 1869. Its cautious language in the general act would rather indicate an intention to save the cities and towns all special powers, not interfering with that uniformity of organization and government, which was the true aim of

the act. The acts consist. Repeals, by implication, must be necessary; or, at least, arise from a clear and unmistakable intention. Had the legislature of 1869 intended to bring the organization and government of Helena in harmony with that of other cities and towns, and, at the same time, save to her all special powers, granted by special acts, for the public good, it could not well have used apter language, without indeed expressly declaring that the act of 1867 should remain in force. Although such declarations are usual, to remove all doubt, they are not necessary.

The court erred in declaring the coupon invalid. Reverse the judgment, and remand for a new trial.