LaFayette *v.* Merchants' Bank.

Opinion delivered January 14, 1905.

1. Forged draft—payment under mistake—recovery.—Under the general rule that one who has paid money under a mistake of fact may recover it, a drawee who, without notice of any forgery, has paid a draft to the holder to whom it was negotiated by the forged indorsement of the payee's name may, upon discovering such forgery, recover of such holder the money paid upon the draft if a bill of sale upon the back of the draft, also forged, was notice to every one taking it that the drawee would pay, not out of funds of the drawer in his hands, but out of his own funds, upon the belief that there was a valid bill of sale attached to the draft. (Page 565.)

2. Mistake—laches.—The fact that the drawee of a forged draft, after paying it to the holder under a mistaken belief that it was genuine, did not for six months notify such holder of the forgery, does not preclude his recovery of such payment, if the drawee, without negligence, failed to discover the forgery earlier, and the holder was not prejudiced by the delay. (Page 567.)

3. Appeal—directing verdict.—In determining, on appeal, the correctness of the trial court's action in directing a verdict for the defendant, the rule is to take that view of the evidence that is most favorable to the plaintiff. (Page 568.)

Appeal from Sebastian Circuit Court, Fort Smith District.

Styles T. Rowe, Judge.

Reversed.

LaFayette & Brother, merchants and dealers in live stock at Checotah, Ind. Ter., in June, 1898, entered into an agreement with one Boudinot Whitlock by which, under certain conditions, they were to advance money to Whitlock for the purchase of cattle. These conditions were that Whitlock, when he purchased cattle, should give the vendor of the cattle a draft on LaFayette & Brother for the price thereof, on the back of which draft there should be indorsed a bill of sale conveying the cattle to LaFayette & Brother. When this draft was presented with a proper bill of sale indorsed on the back and signed by the seller of the cattle, then LaFayette & Brother were to pay the draft, and hold the cattle as security for the money advanced by them. The evidence is not very clear as to what profit LaFayette & Brother were to receive, but it is said that the expectation was that they would afterwards purchase the cattle from Whitlock if they could agree on the terms, and that the bill of sale was intended only as security.

In pursuance of this agreement, a printed form of a check with the bill of sale printed on the back was prepared, and these forms were delivered to Whitlock to be used when he purchased cattle. Whitlock afterwards drew twelve of these drafts with bills of sale printed on the back, which, on being presented to LaFayette & Brother, were paid by them, but it turned out that the names of the payees indorsed on six of these drafts and signed to the bill of sale thereon were forgeries. The fact was that the payees' names thereon had been forged by Boudinot Whitlock, and the drafts then discounted or sold to third parties. Four of these drafts, with the forged indorsements thereon, were taken by Whitlock to the Merchants' Bank of Fort Smith, Ark., which paid him the face value thereof in due course of business without notice that the indorsements of the payees' name on the drafts and to the bill of sale were forgeries. All of the drafts were in the same form, but made payable to different persons, and the following is a copy of one of them at the time it was presented to the Merchants' Bank:

"$156.                    Checotah, I. T., July 25, 1898.

"LAFAYETTE & BRO.,

          "General Merchants and Live Stock.

"Pay to the order of S. A. Smith one hundred and fifty-six dollars.

No. 11.                              "BOUDINOT WHITLOCK."

          Upon the back of the draft was the following:

"Know all men by these presents, that, for and in consideration of the sum of one hundred and fifty-six dollars to me in hand paid, the receipt whereof is hereby acknowledged, I, S. A. Smith, of Lena, Ind. Ter., do hereby bargain, sell and deliver unto LaFayette & Brother, of Checotah, Ind. Ter., all the following described property, namely [here follows description of ten head of cattle]. I covenant that I am the absolute owner of the property aforesaid, and have the lawful right to dispose of the same; also that I will warrant and defend the title hereby conveyed against whomsoever claiming or to claim the same.

"In witness· whereof I have hereunto set´my hand this 25th day of July, 1898.

                              · "S. A. SMITH."

          · In addition to the signature of S. A. Smith to the bill of sale, his name was also indorsed on the back of the draft. And after the bank had paid for the draft it made the following indorsements thereon:

          "Pay First National Bank or order.

          "Merchants' Bank, C. S. Smart, cashier.

          "R. L. Martin, Cas."

          The Merchants' Bank then forwarded the drafts to the First National Bank of Muskogee, Ind. Ter., and it in turn presented the drafts to LaFayette & Brother, who, not knowing or having any notice that the signature of the payees signed to the bills of sale and indorsed on the drafts were not genuine, paid the amount of the drafts. Some four or five months afterwards, when they went to gather up the cattle described in the bills of sale, they found that the signatures of the payees were forged. S. A. Smith, the purported payee, made affidavit that he had never sold Boudinot Whitlock any such cattle, and had never seen or heard of such a draft, and that his signature,

indorsed thereon and attached to the bill of sale, was a forgery. The payees to the other drafts made affidavits to the same effect.

Soon after the discovery of the forgery, LaFayette & Brother notified the Merchants' Bank, and demanded a return of the money. The bank at first denied that the signatures of the payees were forged, but after the affidavits were obtained the forgeries were admitted, but the bank declined to return the money, and LaFayette & Brother brought this action to recover the same.

The circuit court, after hearing the evidence, held that the defendant was not liable, and directed a verdict for the defendant, and the plaintiffs appealed.

*Hill & Brizzolara,* for appellant.

An indorser is liable for preceding forged indorsements. 39 Ark. 47; 57 Miss. 633; 31 Pac. 491; 40 N. Y. 456; 2 Rand. Com. Pap. § 752; 1 Dan. Neg. Inst. § 672; 4 Am. & Eng. Enc. (2d Ed.), 481, 482; 7 Yerg. 310; 12 S. W. 16; 71 N. W. 162; 27 Kans. 728; 50 N. E. 723; 30 N. E. 808; 106 Mass. 441. Payment of the forged paper does not prevent recovery against an indorser. 31 Pac. 491; 1 Hill, 287; 3 Rand. Com. Pap. § § 1486, 1487; 10 Wheat. 333; 2 Dan. Neg. Inst. § § 1372, 1361; Chitty, Bills, 431, 485; 14 La. Ann. 458; 12 S. W. 716; 4 Ohio St. 628; 1 Dan. Neg. Inst. § 534. The draft in question is commercial paper. 1 Dan. Neg. Inst. § § 59, 60. If not commercial paper, indorser is liable. 28 S. W. 156; 92 U. S. 447; 42 N. J. L. 421. The statute of limitation of five years applies. 68 Ark. 423; 59 Ark. 86; 4 Am. & Eng. Enc. Law (2d Ed.), 477; 1 Dan. Neg. Inst. § 669; Sand. & H. Dig. § 4827; 3 Rand. Com. Pap. § § 1591, 1608. Whitlock was not the agent of plaintiffs. 127 Mass. 516. The holder of collateral is not required to exhaust the same. 2 Rand. Com. Pap. 671.

*Ira D. Oglesby,* for appellee.

While an indorser warrants the genuineness of prior indorsements, the doctrine has no application where no right of the indorsee or payee is involved. Rand. Com. Pap. § 161; 12 Wall. 181; 15 Pac. 240; 15 Pet. 393; 11 How. 177; 1 N. Y. 113.

*Hill & Brizzolara,* for appellant in reply.

· The drawee may recover of the drawer money paid upon a genuine check, which was presented and paid to him, when at the time of such presentment and payment the name of the payee was written in and indorsed upon such check. 36 App. Div. (N. Y.) 112; 19 Pick. 99; 3 Hill, 227; 126 N. Y. 318; 1 N. Y. 113.

Riddick, J., (after stating the facts.)    This is an action to recover money paid under mistake of fact.    And the facts, briefly stated, are that one Boudinot Whitlock had an agreement with the plaintiffs, LaFayette & Brother, by which LaFayette & Brother agreed to pay drafts drawn by Whitlock on them for the purchase price of cattle, provided that a bill of sale signed by the vendor conveying the cattle to LaFayette & Brother should be indorsed on the back of the draft as security for the payment of the draft. . To enable Whitlock to have these drafts with bill of sale in proper form, blank drafts with bills of sale printed on the back, with spaces for description of cattle purchased and for signature of the owner, were prepared and given to Whitlock.    The intention was that he should buy these cattle in the Indian Territory, where he lived, and where the firm of LaFayette & Brother was in business.    He afterwards drew drafts in favor of certain parties living in the Territory without their knowledge, and then without their knowledge or consent indorsed their names on the back of the drafts, and signed their names to the bills of sale on the back of the drafts, and then delivered the drafts to the Merchants' Bank, of Fort Smith, which paid him full value therefor.    The bank indorsed the draft, and sent it to a bank at Muskogee, Ind. Ter., which presented it to LaFayette & Brother for payment, and they paid it.    Neither the Merchants' Bank nor LaFayette & Brother had any notice of the forgery, and both supposed that it was a legitimate transaction on the part of Whitlock.    On the discovery of the fraud, LaFayette & Brother demanded that the bank repay the money, and upon its refusal to do so they brought this action to recover it.

It is a general rule that money paid under a mistake of fact may be recovered.    The right of recovery proceeds upon the theory

that the plaintiff has paid money which he was under no obligation to pay, and which the party to whom it was paid had no right to receive or to retain. The law therefore raises an implied promise on his part to refund.it, and an action will lie to recover it. The reasons which permit a recovery are equitable in their nature, and the rule does not apply in any case where it would be unjust or inequitable to compel the return of the money. For instance, if one, in ignorance of the date of the maturity of a note, pays it, and afterwards discovers that it is barred by statute of limitations, he cannot recover the money paid, as there was a moral obligation on him to pay his debt, whether barred or not. 15 Am. & Eng. Enc. Law (2d Ed.), pages 1103 to 1106, and cases cited.

But no such reason exists in this case. When this draft was presented to the plaintiffs for payment, it had the indorsement of the defendant bank upon it, as well as the indorsement of the name of the payee and his signature to the bill of sale on the back of the draft. The plaintiffs had the right to suppose that the bank had taken proper precaution to ascertain that these signatures were genuine. The presentation of the draft for payment under such circumstances was in effect a representation on the part of the bank either that it had paid or that it would pay to the payee or to his order the amount named in the draft, and that his signature both to the bill of sale and indorsed on the draft was genuine. Under these circumstances the plaintiffs paid over the money to the collecting bank, acting as the agent of the defendant in making the collection, and it seems to us that the equities are in favor of the plaintiffs, and that a recovery should be allowed, unless there is some rule of law that forbids it.

Now, there is an exception to the rule permitting a recovery of money paid under a mistake of fact in the case of a drawee paying a draft or check upon which the name of the drawer had been forged. The reason for the exception is said to be that the drawee should know the signature of the drawer, and that he is guilty of carelessness in paying a check where the drawer's name has been forged, and that, as between him and an innocent holder, no recovery should be allowed. Defendant contends that the exception applies also where the name of the drawer is

genuine, and where the drawer has himself forged the signature. of the payee. There is authority to support that position. The Supreme Court of the United States so declared the law in an opinion delivered by Chief Justice Taney. The court said that "the acceptor of a bill is presumed to accept upon funds of the drawer in his hands, and he is precluded by his acceptance from averring to the contrary in a suit brought against him by the holder." _Hortsman_ v. _Henshaw,_ 11 How. 177; Bigelow on Bills and Notes, 568.

But, though there are cases that seem to hold to the contrary (_Merchants'· Bank_ v. _Bank of Commonwealth,_ 139 Mass. 513; _Northampton Bank_ v. _Smith,_ 169 Mass. 281), still we may admit that the rule declared by Chief Justice Taney is correct in cases where there is nothing on the draft to give notice that the drawee does not pay out of funds of the drawer in his hands. But that is not the case here. The bill of sale on the back of the draft was notice to every one taking it that the drawee was paying, or would pay, not upon the funds of the drawer in his hands, but out of his own funds, upon the belief that there was a valid bill of sale and a transfer of the property described therein. The form of the draft was notice to the bank that the drawee would not pay unless the bill of sale and the signature thereto were genuine, and it should have taken the usual precautions to ascertain that they were genuine before parting with its money. It obtained this money, not by presenting the drafts alone, but by presenting them in connection with these forged bills of sale. The drawee was ignorant of the forgery, and the case, as we think, comes within the general rule that one who has paid money under a mistake of fact may recover it. _Northampton Bank_ v. _Smith,_ 169 Mass. 281; _Merchants' Bank_ v. _Bank of Commonwealth,_ 139 Mass. 513; _Star Fire Insurance Co._ v. _New Hampshire Bank,_ 60 N. H. 442; _Carpenter_ v. _Bank,_ 123 Mass. 66.

It is true that the drawees did not notify the bank of the mistake and the forgery until five or six months after the money was paid, but the reason of that was that they were themselves ignorant thereof. Having no reason to suspect that a forgery had been committed, they were not guilty of negligence in failing to discover it sooner; and so soon as they discovered

it, they notified the bank. Nor is it shown that the bank was injured in any way by the delay, so we think that it furnishes under the circumstances no defense to the action.

The circuit court directed a verdict for the defendant. In testing the correctness of that ruling we must take that view of the facts sustained by evidence that is the most favorable to plaintiffs, and when we do that it seems very clear that the court erred in directing a verdict. The judgment is therefore reversed, and the cause remanded for a new trial.

HILL, C. J., not participating.