FORT SMITH *v.* UNITED STATES RUBBER COMPANY.

Opinion delivered November 2, 1931.

George W. Dodd, for appellant.

Hill, Fitzhugh & Brizzolara, for appellee.

McHANEY, J. The appellee, Eureka Fire Hose Manufacturing Company, operates as a department of the United States Rubber Company and both will hereafter be referred to as appellees. The city of Fort Smith operates under a commission form of government with a mayor, and two commissioners known and designated as commissioner No. 1 and commissioner No. 2, the mayor being in charge of the Department of Public Affairs and being the chief executive officer of the city, and commissioner No. 1 being in charge of the Department of Accounts and Finances and the Department of Health and Safety, the Fire Department being a part of the Department of Public Safety. These will hereafter be referred to as appellants. Appellants were in need of 6,000 feet of fire hose and advertised for bids to be submitted December 22, 1924, for said quantity with the right to take a lesser amount. Appellees submitted the lowest bid, $1.40 per foot, and on that date the parties entered into a written contract for the purchase and sale of 2,000 feet of two and one quartèr inch, Paragon Brand, fire hose of certain specifications for a consideration of $2,800, payable one-half July, 1925, and one-half July, 1926. On December 29, 1924, appellant, through commissioner No. 1, ordered an additional 1,000 feet of the same kind of hose and on the same terms as that of December 22, the written order reciting that, at a meeting of the city commission, he was instructed so to do. Again, on March 8, 1925, on account of a disastrous fire in Ft. Smith, which

showed the necessity for additional hose, commissioner No. 1 ordered by telephone an additional 3,000 feet of the same kind of hose and on the same terms as the first order above mentioned, and on March 14, 1925, confirmed this order by letter, and, in addition to the telephone request, ordered 1,500 feet of one and one-half inch hose. In this letter it was stated that "This order is to be handled in the same manner as under date of December 22, 1924." This completed the total amount of hose for which bids were asked as of December 22, and 1,500 feet of smaller hose in addition. All these orders were promptly accepted and shipped by appellees to appellants who found the hose up to specifications and who accepted same, put it into immediate use, and is still using same, being practically all the hose appellants have. When pay day came, appellants neglected to pay, and appellees have been sending statements regularly ever since, requesting and demanding payment, but no part of the debt has been paid. The total amount is $9,900, being $8,400 for the larger, and $1,500 for the smaller hose. This suit followed, being filed February 10, 1931. It was tried by consent before the court without a jury, and judgment was rendered against the city for the full amount sued for.

No contention is made by appellants as to the validity of the contract as to form of the first order for 2,000 feet of hose, dated December 22, nor is much contention made as to the second order of date December 29, although irregularly done, as it is conceded that the city may be estopped to question the validity thereof, so far as the formality required by law is concerned, as was held by this court in *Natural Gas & Fuel Corporation* v. *Norphlet Gas & Water Co.*, 173 Ark. 174, 294 S. W. 52. The commission form of government act, act 13 of 1913, as amended, provides in § 10 that the mayor shall be the chief executive officer of the city and, *inter alia*, shall "sign all bonds, contracts, conveyances and other written obligations of the city." It is contended that the third order confirmed under date of March 14, 1925, is void and unenforcible, because the city commission took

no action thereon, made no minute of it, and the order or contract was not signed by the mayor, was an oral contract and barred by the three year statute of limitations, to be hereafter discussed. We think the third contract not invalid on account of the informalities in its execution, and that the city is estopped in the same manner as on contract No. 2. *Natural Gas & Fuel Corp.* v. *Norphlet Gas & Water Co., supra.* The city also ratified the unauthorized act of its agents, if unauthorized, by accepting, keeping and using the fire hose, and it would do violence to one's sense of common honesty and fair dealing to hold that collection could not be enforced because of mere irregularities in making the contract or that the agent exceeded his authority in doing so. As said by this court in *International Harvester Co.* v. *Searcy County,* 136 Ark. 209, 206 S. W. 312: "The county could not retain the property which it might then legally purchase, continue to use it and defeat a recovery for the price thereof. This follows from the principles decided in *Howard County* v. *Lambright,* 72 Ark. 330, 80 S. W. 148, and *Forrest City* v. *Orgill,* 87 Ark. 389, 112 S. W. 891. In the latter case the city of Forrest City purchased machinery for water works, and the contract was void because not executed as required by § 5473 of Kirby's Digest. The city, however, kept the machinery and continued to use it. The court held that, inasmuch as the contract was one within the power of the municipality to make, although it was made without authority, it could not retain the machinery, use it, and at the same time defeat a lien for the price thereof." See also *Ark. Valley Bank* v. *Kelley,* 176 Ark. 387, 3 S. W. (2d) 53; *Scott County* v. *Advance Rumley Thresher Co.,* 288 Fed. 739; *Texarkana* v. *Friedell,* 82 Ark. 531, 102 S. W. 374. "The theory of these cases," says Judge Kenyon in the Scott County case, *supra,* "is that a corporation, such as a county or city, should not be permitted to stultify itself by accepting property for necessary use, use it for years until it is worn out, and then refuse to pay on the ground of a lack of authority to make the contract.

A municipal corporation, which has enjoyed the fruits of a contract, fairly made, cannot, when called to account, deny the corporate power to make it."

It is next sought to avoid payment on account of the provisions of what has been referred to in many of our decisions as Amendment Number 11 to our Constitution, but what in fact is Amendment Number 10. This amendment became effective December 7, 1924, 15 days prior to the execution of the first contract in this case. *Matheny* v. *Independence County,* 169 Ark. 925, 277 S. W. 22. The pertinent parts of said amendment are as follows: ''The fiscal affairs of counties, cities and incorporated towns shall be conducted on a sound financial basis * * *; nor shall any city council, board of aldermen, board of public affairs or commissioners of any city of the first or second class, * * * enter into any contract or make any allowance for any purpose whatsoever, or authorize the issuance of any contract or warrants, scrip or other evidence of indebtedness in excess of the revenue for such city or town for the current fiscal year; nor shall any mayor, city clerk, or recorder, or any other officer or officers, however designated, of any city of the first or second class * * * sign or issue any scrip, warrant or other certificate of indebtedness, in excess of the revenue from all sources for the current fiscal year.'' Then follows the bond issuing provision for debts existing at the time of the adoption of the amendment. As was said in *Polk County* v. *Mena Star Co.,* 175 Ark. 76, 298 S. W. 1002, with reference to counties (and the same applies to cities), this amendment was drawn and adopted with two purposes in view: ''(1) to prevent them from incurring any indebtedness in any fiscal year in excess of the revenue from all sources for such year; and (2) to provide a way to pay indebtedness existing at the time of the adoption of the amendment.'' The prohibition therein is against the making of contracts and allowances in any fiscal year in excess of the revenue from all sources for that year. Just what the fiscal year of the city of Fort Smith

was in 1924 is not shown, but the enabling act of 1925 made it the same as the calendar year. Act No. 210 of 1925, p. 611, § 7. The amendment does not prohibit the city from going in debt, but from going in debt in excess of the revenue from all sources for the fiscal year. It was prospective in operation and had no effect on indebtedness existing prior to its effective date. *Shroll* v. *Newton County,* 173 Ark. 1121, 295 S. W. 1, but did prohibit the incurring of indebtedness thereafter in excess of the revenue for the fiscal year. Since the city had no fiscal year at the time of the adoption of this amendment, December 7, 1924, we think it reasonable to establish it from that date to December 7, 1925, and, if so, we find the revenue largely in excess of $200,000, whereas this debt was only $9,900. Or if we say the fiscal year was the calendar year, the same thing is true for the year 1925. Or if we say it comes under the 1924 fiscal year from January 1 to December 31 inclusive, it is not shown that the debts contracted during that year were of themselves in excess of the revenue of that year. True, taking into consideration the old debts, contracted prior to 1924, and the payments made thereon from revenue during that year, there was a deficit in the revenue; but that is not what the amendment prohibits. There has not been a year since this debt was incurred, no matter on what basis the fiscal year is fixed, that the revenue was not in excess of this debt. As said in *Miller* v. *Woodruff County,* 176 Ark. 889, 1 S. W. (2d) 998, with reference to the construction of this amendment as applied to counties: ''A county, whether it issues bonds or not, cannot increase the amount of its existing indebtedness; but it is not an increase of indebtedness if a county, which cannot redeem all of its outstanding warrants, issues others which cannot be redeemed through the lack of funds, but which, when issued, are not in excess of the indebtedness outstanding at the end of the prior fiscal year. To illustrate: If a county has an outstanding indebtedness of $19,441, as Woodruff County had at the beginning of the fiscal year,

it may, during that year, issue warrants which, while they cannot be redeemed, do not exceed the indebtedness existing at the beginning of that year. The amendment does not prohibit this. The prohibition of the amendment is against increasing the amount of the indebtedness.'' So here the contracts of the city for 1924 did not exceed the revenues of that year. This debt was to be paid one-half in 1925 and the balance in 1926, and was for the accommodation of the city. Being valid when contracted, the indebtedness may be paid out of the revenues of subsequent years. *Polk County* v. *Mena Star Co., supra; Miller* v. *Woodruff County, supra.*

Finally, it is argued that the order for hose in March, 1925, was an oral contract, made by telephone, and is barred by the three-year statute of limitations. We cannot agree with appellants in this contention. It is true the order was given over the telephone, but later it was confirmed in writing, was accepted by appellees in writing by shipping the hose and rendering invoice. This was a written contract. Moreover the record discloses several letters from appellants to appellees acknowledging the debt and tolling the statute.

We find no error, and the judgment is affirmed.