PERRY COUNTY v. J. A. RIGGS TRACTOR COMPANY.

4-5888 139 S. W. 2d 46

Opinion delivered April 8, 1940.

 

*Pat Mehaffy* and *Henry E. Spitzberg,* for appellant.

*P. A. Lasley,* for appellee.

McHANEY, J. Subsequent to the decision of this court in *Taylor* v. *J. A. Riggs Tractor Co.,* 197 Ark. 383, 122 S. W. 2d 608, in which it was held that the contract, entered into between appellee and Perry county for the sale of a tractor, was void, appellee presented its claim to appellant for $1,200 for the rent of said tractor for a period of four months at $300 per month. The original sale price in the void contract was $4,362.64, to be paid in eight quarterly sums of $545.33 each—title being retained in appellee until paid in full—and for which warrants were issued payable as above out of the county turn back fund. The tractor was delivered to and used by the county for a period of four months. After the decision above cited, the county court canceled said warrants, none having been paid, which were surrendered, and the tractor turned back to appellee. In its order canceling said warrants, the county court provided that nothing therein contained should be construed as affecting any claim appellee might have for rent of the tractor during the time it was used by the county.

The claim for rent was presented to the county court and disallowed by it. On appeal to the circuit court, the claim was allowed in full, and the county, through her prosecuting attorney, has appealed from that judgment.

For a reversal, it is first earnestly contended that the court was without legal authority to compensate appellee in any amount for the usable value of the tractor. While it is true that the contract held void by this court was one of sale and purchase, with title retained in the seller until the purchase price was paid in full and that there was no provision therein for the payment of rent in case the contract should be held void, it is also true

that the parties entered into this contract in good faith, having been advised by able counsel of the legality thereof. Upon delivery of the tractor, it was put in use by the county in the repair, construction and maintenance of farm-to-market roads, and kept and so used for a period of four months.

Under these circumstances, we think the law will imply a contract between the parties to pay for the use of the tractor—a course of conduct required by fundamental principles of common honesty and square-dealing. The contract was made by the parties acting in good faith, and upon the advice of the then prosecuting attorney. The purposes of the contract were good, not *malum in se,* but merely *malum prohibitum,* by reason of Act 193 of 1937, p. 687. This act was amended by Act 299 of 1939, p. 739, so as to validate county warrants outstanding on January 1, 1939, which were invalidated by virtue of our decision in *Taylor* v. *Riggs, supra,* upon certain conditions set out in said act. This shows that the public policy of the state declared by the legislature was not to outlaw such contracts, entered into in good faith, not *malum in se,* but to declare them valid and payable out of the county turn-back fund.

We think the case of *Little Rock* v. *The White Company,* 193 Ark. 837, 103 S. W. 2d 58, is in point here. There the city had entered into a conditional sales contract to purchase a truck and street flusher from The White Company, in which it was stipulated that the city should pay rent for this equipment in case the purchase price was not paid—a stipulation not in the contract in this case. Suit was brought to recover the alleged rental value for 18 months use of $4,500, no payments having been made thereon. The city defended on the grounds that the contract was in violation of amendment No. 10 to the constitution and that it was never made by the city nor approved nor authorized by the board of public affairs. The opinion recites: "There was no evidence that either the board of public affairs or the city of Little Rock, made the contract or authorized it." The trial court instructed the jury that "the only question for you to decide is what the amount of rental should

be." A verdict was returned for $4,250 and the city appealed. In affirming the judgment, in which a number of cases were cited, including *Ft. Smith* v. *U. S. Rubber Co.*, 184 Ark. 588, 42 S. W. 2d 1004, *Yaffe Iron & Metal Co.* v. *Pulaski County*, 188 Ark. 808, 67 S. W. 2d 1017, and *Ft. Smith* v. *Giant Mfg. Co.*, 190 Ark. 434, 79 S. W. 2d 440, it was said: "It has, therefore, been definitely settled by this court that, notwithstanding a contract for the purchase or use of equipment is void, the city cannot retain the property and refuse to make payment." Here, appellant has not retained the tractor. It has surrendered same. But it has retained the value of the use of the machine and ought, in good conscience and fair dealing, to pay for same. As said by the Circuit Court of Appeals (Fifth Circuit) in *Floydada* v. *American La-France Industries*, 87 Fed. 2d 820: "However, upon the facts accomplished in the frustrated effort to deal between themselves without complying with the constitutional mandate, the general law fixed the legal relation of the parties and implied a contract between them consistent with honesty and fair-dealing. The title to the fire truck never passed to the city, but remained in the would-be vendor; and since the actual possession was transferred to the former and by it the chattel was put to a beneficial use, the law implied an agreement to pay a reasonable compensation as hire, the amount thereof being within the current revenues of the city."

We, therefore, conclude that appellant is liable for the usable value of the tractor for the four months it had and used it.

The question that has given us most concern is, what is the reasonable rental or usable value? The county judges of Cleveland and Lonoke counties testified that they rent similar tractors from appellee at $250 per month under a contract providing that, when they have made rental payments for so many months, the tractor becomes the property of the county. Here the quarterly payments required under the contract were $545.88, or $181.77 per month, and, after making eight quarterly payments the tractor would have belonged to the county. The testimony shows that the life

of such a tractor is from three to five years. It must be admitted, and counsel for appellant do admit, that there is substantial evidence in the record to support a finding of $300 per month rental value. But we are of the opinion that such a sum is excessive and exorbitant in view of all the facts and circumstances surrounding the transaction. While both parties acted in absolute good faith in making the contract, they should share the responsibility and resulting consequences of its being held void equally. One was to blame as much as the other. So each should share a portion of the resultant loss. If we should figure the rental value on the depreciation of the tractor, based on its purchase price of $4,362.64 and its minimum life of three years, it would be $121.19 per month, or $484.76 for four months. If we take the quarterly payments of $545.33, as stipulated, as the rental value, the amount per month would be $181.77, or $727.08 for four months. We have reached the conclusion that neither basis would be fair and equitable to both parties. Depreciation value alone would leave nothing as compensation to appellee, and the basis of stipulated payments leaves out of consideration the element of ownership of the tractor in the county, had the payments been made. The $300 per month as fixed by the trial court omits that consideration, for, in a little more than fourteen months, the rental value would have equaled the purchase price and the county would have no ownership therein. So it appears to us that a middle ground between the depreciation value and the stipulated payments on a monthly basis would be reasonable, just, and equitable, which amount is $150 per month or a total of $600.

We, therefore, modify the judgment by reducing it from $1,200 to $600 and as thus modified, it is affirmed.

SMITH, J., dissents from modification.