VICK CONSOLIDATED SCHOOL DISTRICT No. 21 *v.* NEW.

4-7667                                                    187 S. W. 2d 948

Opinion delivered June 4, 1945.

*J. R. Wilson,* for appellant.

*Aubert Martin,* for appellee.

McFADDIN, J. This is a controversy between a school district and one of the teachers. The directors were also defendants along with the district, but we treat the case as being between the district and the teacher.

On January 1, 1944, Arthur G. New filed his complaint against the Vick Consolidated School District, seeking to recover $320 as an alleged balance due for teaching in 1942-43, and also seeking to recover his proportionate part of the balance remaining in the 1942-43 budget fund earmarked for teacher salaries under Act 319 of 1941. To this complaint the defendant filed a demurrer.

In the same case, the school district filed a cross-complaint against Arthur G. New, claiming that he had obtained a teacher's contract from the district by falsely representing that he then had a license to teach school, and that he had thus received money from the school district in violation of the law, and the district should recover from him all money he received from the district. To this cross-complaint the plaintiff filed a demurrer.

On September 4, 1944, the circuit court sustained the defendant's demurrer to the plaintiff's complaint, and also sustained the plaintiff's demurrer to the defendant's cross-complaint. The plaintiff elected to stand on his complaint, and the defendant elected to stand on its cross-complaint; so final judgment was entered dismissing both the complaint and cross-complaint, and each side has appealed. Although in this court the district is the appellant and New is the cross-appellant, nevertheless, for clarity, we will refer to the parties as they were styled in the lower court, *i.e.,* plaintiff and defendant. We first consider the complaint, and then the cross-complaint.

I. *Plaintiff's Complaint.* In his complaint, with the two amendments thereto, New alleged, *inter alia:*

(1) That he "was at all times hereinafter mentioned the holder of a certificate showing that he was duly qualified to teach in said school"; and "that he was the holder of a junior high school certificate dated June 30, 1941, and which was valid until the 30th of June, 1943, and that he is the holder of a three-year elementary certificate issued by the Arkansas Department of Education dated December 12, 1942, and that application for such certificate was made prior to commencing plaintiff's work at Vick."

(2) "That on the 5th day of September, 1942, the said directors of said district . . . elected the plaintiff as superintendent of the school at Vick and to teach said school for a period of eight months beginning September 14, 1942."

(3) "That on the 21st of November, 1942, one of the teachers who was employed when the budget for the year 1942-43 was made, having resigned, on that date an additional supplemental contract was made" with the plaintiff New, which provided, among other things, that New would receive $320 additional salary for teaching three of the subjects of the resigned teacher; and that the "contract was reduced to writing and filed with the county supervisor of Bradley county and with the treasurer of Bradley county."

(4) "That plaintiff fully complied with said contract and performed the services required of him, but that the defendants failed and refused to pay him" this $320.

(5) That for the school year 1942-43, after paying all teachers' salaries, there is left a balance of $1,040.06 in the fund earmarked for teachers' salaries under the provisions of Act 319 of 1941, and that the plaintiff comes within the provision of Act 319 of 1941 and is entitled to his pro rata part of such unexpended balance, and that the school district has refused to pay the sum to him. The plaintiff prayed for judgment for $320 and for his pro rata part of the $1,040.06 as above mentioned.

We have reached the conclusion that the complaint stated a cause of action, and the defendant's demurrer should have been overruled.

As regards the claim for $320: this complaint alleged a cause of action, in that it alleged the defendant's corporate existence, the plaintiff's license to teach, the making of a contract in writing, the terms thereof, the filing of the contract with the proper authorities, the fulfillment by the plaintiff, and the refusal of the defendant to pay the $320.

As regards the claim under Act 319 of 1941: the complaint alleged a cause of action, in that, in addition to the allegations previously mentioned, the complaint alleged that a budget had been adopted by the district under the said act, that all the money earmarked for teachers' salaries had not been expended, that a certain balance remained, that the plaintiff was entitled to a part of the balance, and that the district refused to pay the plaintiff. Cases involving the rights of teachers under Act 319 of 1941 are: *Fowlkes* v. *Wilson,* 205 Ark. 895, 171 S. W. 2d 958, and *Fennell* v. *School District No. 13, ante,* p. 620, 187 S. W. 2d 187. The defendant's demurrer to the complaint was a general demurrer, merely stating that the complaint did not state facts sufficient to constitute a cause of action. We hold that the circuit court was in error in sustaining the general demurrer to the plaintiff's complaint.

II. *Defendant's Cross-Complaint.* Without waiving the demurrer to the complaint, the defendant filed an answer and cross-complaint. Since the complaint was decided on the demurrer, the answer must be treated as withdrawn; and we do not consider anywhere in this opinion any of the matters contained in the answer. We consider the cross-complaint only to determine whether the trial court was correct in sustaining the demurrer to it. In the cross-complaint the defendant alleged, *inter alia:*

(1) That New secured a teacher's contract from the school district by falsely representing that he had a valid

and subsisting teacher's certificate; that "he well knew at the time he procured the execution of this contract that he did not have a valid certificate, . . . and that his representations to the Vick School District were not true, and that he was not entitled to a contract without a living certificate; . . . that in the contract executed on September 1, 1942, the district should pay Arthur G. New the sum of $150 per month for a term of eight months beginning September 14, 1942."

(2) That "the defendants would further show that when the said Arthur G. New did obtain a certificate authorizing him to teach school, it was a three-year elementary certificate, and was issued on the twelfth day of December, 1942. . . ."

The defendant prayed for the return of the money paid New from the funds of the district on the allegedly void contract.

To this cross-complaint, the plaintiff New offered a general demurrer, which the court sustained. This part of the case has given us considerable concern. In the previous portion of this opinion, we have stated that the circuit court should have overruled the defendant's demurrer to the plaintiff's complaint, because the plaintiff alleged that he had a license. Now, on the cross-complaint, the defendant alleges that the plaintiff did not have a license. This is not by way of answer, but by way of cross-complaint; and the demurrer admits these allegations.

As we understand the contention of the defendant, the district is saying that Arthur G. New had no license of any kind from September 14, 1942, to December 12, 1942, a period of about three months; and that during that period of time he taught school for the Vick district, and received about $450 of money from the district, and that this money should be returned because New had no license for that period of time. What we are saying here relates only to that situation. Consideration of any of the other questions is reserved as pointed out in the concluding section of this opinion. The question here is whether the district can recover money paid a person for

teaching, if that person, during such period of time, had no license to teach school.

A. *The rule in Tallman* v. *Lewis.* The concluding sentence in § 11606 of Pope's Digest reads: "Any person who shall teach in a public school in this state without a legal certificate of qualification to teach shall not be entitled to receive for such services any compensation from the school fund."

That sentence constitutes an absolute inhibition against any teacher attempting to draw money from the public treasury, unless the teacher had a license at the time of teaching. This is no new law. In substance, this has been the law since 1875. Act 46 of 1875, approved December 7, 1875, was the act to maintain the free common schools of Arkansas, and § 80 of that act reads:

". . . that any person who shall teach in a common school in this state, without a certificate of his qualification to teach, shall not be entitled to receive for such services any compensation from revenues raised by tax or in anywise appropriated for the support of common schools."

The evident theory of the law is that one who is to instruct the youth should be competent to do so; that attempted instruction by an incompetent person may be worse than no instruction at all; and that to allow an incompetent person to instruct is to misappropriate and misuse the taxpayers' money. With this statutory inhibition, we view the case here as one in which the rule of *Tallman* v. *Lewis* is applicable, as we will hereinafter explain.

Cases involving alleged irregular dealings between an individual and a governmental subdivision, within the purview of the facts to which this opinion applies, may be classified as follows:

(1) There are those cases in which a city or county or other governmental subdivision has contracted or acted in an informal manner, and received property which it was not strictly supposed to receive in the manner pursued, but in which cases the acts were *not forbidden by*

*statute.* In those cases, the governmental subdivision must either tender back the acquired articles, or pay therefor. Some such cases are *Ft. Smith* v. *U. S. Rubber Co.,* 184 Ark. 588, 42 S. W. 2d 1004; *Perry County* v. *J. A. Riggs Tractor Co.,* 200 Ark. 304, 139 S. W. 2d 46; *Ft. Smith* v. *Giant Mfg. Co.,* 190 Ark. 434, 79 S. W. 2d 440; *Yaffee Iron & Metal Co.* v. *Pulaski County,* 188 Ark. 808, 67 S. W. 2d 1017.

(2) There are those cases in which an official has contracted with the district or counsel or other governmental subdivision of which he was a member, and has rendered services or supplied materials in good faith, and when the contract was *not forbidden by statute,* but was still something that should not have been done. In those cases—where the contract was *not forbidden by statute*—the court has allowed a recovery by the individual against the governmental subdivision in a *quantum meruit* basis. Some such cases are: *Spearman* v. *Texarkana,* 58 Ark. 348, 24 S. W. 883, 22 L. R. A. 855; *Frick* v. *Brinkley,* 61 Ark. 397, 33 S. W. 527; *Smith* v. *Dandridge,* 98 Ark. 38, 135 S. W. 800, 34 L. R. A., N. S., 129, Ann. Cas. 1912D, 1130.

(3) There are those cases in which an individual has dealt with the district, council, board, or other governmental subdivision *in plain violation of the letter of the statute,* and has received public money under a course of dealings *forbidden by statute.* In those cases the courts have not only refused the individual the *quantum meruit* for his services rendered, but have also allowed recovery by the governmental subdivision of any moneys paid the individual, on a contract forbidden by statute. Some such cases are: *Tallman* v. *Lewis,* 124 Ark. 6, 186 S. W. 296; *Carter* v. *Bradley County Road Improvement District,* 155 Ark. 288, 246 S. W. 9; *Ridge* v. *Miller,* 185 Ark. 461, 47 S. W. 2d 587; *Gantt* v. *Arkansas Power & Light Co.,* 189 Ark. 449, 74 S. W. 2d 232. These cases are the ones we refer to as "the rule of *Tallman* v. *Lewis*"; and we hold that these cases apply to the cross-complaint of the defendants in the case at bar, in so far as concerns the allegations that New received money for teaching during a time in which he had no license.

*Tallman* v. *Lewis* was a suit by a taxpayer to recover money previously paid by a district to one of the commissioners for services rendered. The law provided that no commissioner should be interested in any contract made by the district. Tallman, one of the commissioners, had served in lieu of an engineer, and had been compensated for such services. Lewis, a property owner, brought suit to recover the money so paid Tallman for his services. This court, speaking by Mr. Justice HART, said:

"The general rule is that where a contract is expressly prohibited by law, and the statute in terms declares the contract to be null and void, no recovery can be had under it and that a taxpayer has a right to maintain an action to recover back money illegally paid when its officers neglect or refuse to perform their duty in that respect. *Capron* v. *Hitchcock*, 98 Cal. 427, 33 Pac. 431; *West* v. *Berry*, 98 Ga. 402, 25 S. E. 508; *Dwight* v. *Palmer*, 74 Ill. 295; *Winchester* v. *Frazer* (Ky.), 43 S. W. 453; *O'Neil* v. *Flannagan*, 98 Me. 426, 57 Atl. 591; *Stone* v. *Bevans*, 88 Minn. 128, 29 N. W. 520, 97 Am. St. Rep. 506; *Milford* v. *Milford Water Co.*, 124 Pa. St. 610, 17 Atl. 185, 3 L. R. A. 122."

The rule of *Tallman* v. *Lewis* was applied in the case of *Carter* v. *Bradley County Road Improvement District* to a person who was not a member of the board, but had sought to contract in violation of the statute. *Lee* v. *Mitchell*, 108 Ark. 1, 156 S. W. 450, while not exactly in point, does say:

"The teachers and the directors know the law, and that none can teach who do not hold a teacher's license, and the contract is entered into with that understanding, . . ."

In *Goose River Bank* v. *Willow Lake School Township*, 1 N. D. 26, 44 N. W. 1002, 26 A. S. R. 605, the Supreme Court of North Dakota decided a case like the one at bar. North Dakota had a statute similar to the concluding sentence of § 11606, Pope's Digest; and a teacher had taught school without a license and had

received and transferred the warrant for such services. In refusing recovery, either on the warrant or on *quantum meruit*, the North Dakota Supreme Court said:

"There is no force in the position that the defendant, having received the benefit of the teacher's services, is liable. Such a doctrine would defeat the policy of the law, which is to give the people of the state the benefit of trained and competent teachers. The law recognizes only one evidence that that policy has been regarded,— the certificate of qualification. If the defendant could be made liable by the mere receipt of the benefit of the services rendered, the law prohibiting the employment of teachers without certificates, and declaring void all contracts made in contravention of that provision, would be, in effect, repealed, and the protection of the people against incompetent and unfit teachers, which such statute was enacted to accomplish, would be destroyed. Where a contract is void because of the express declaration of a statute, or because prohibited in terms, the retention by a municipality of the fruits of such a contract will not subject it to liability, either under the contract or upon a *quantum meruit: Dickinson v. City of Poughkeepsie*, 75 N. Y. 65; *McBrian v. City of Grand Rapids*, 56 Mich. 95, 22 N. W. 206; *Thomas v. Richmond*, 12 Wall. 349, 20 L. Ed. 453; *Argenti v. San Francisco*, 16 Cal. 255; *City of Litchfield v. Ballou*, 114 U. S. 190, 5 S. Ct. 280, 29 L. Ed. 132. See, also, *National-Tube Works Co. v. City of Chamberlain*, 5 Dak. 54, 37 N. W. 761. This is particularly true in a case like the one at bar, where no person can teach without the certificate without being actually or legally in collusion with local officers to defeat a wise and salutary statute enacted as a barrier against the employment of unqualified teachers. The person who teaches without the certificate has violated the letter and the spirit of the law." See, also, *Richards v. Richardson* (Tex. Civ. App.), 168 S. W. 50; *Wells v. People, ex rel. Daniels*, 71 Ill. 532; Voorhees on "The Law of Public Schools," p. 141; and Annotation in 30 A. L. R. 834, on effect of failure of school teacher to obtain a license.

The rule of *Tallman* v. *Lewis* applies here because the concluding sentence of § 11606 of Pope's Digest plainly forbade New from receiving money from the school fund so long as he had no license. The cross-complaint alleged that there was a period of about three months in which he had no license, and received school money. The receipt of such money for such period of time was a diversion of public funds, and should be recovered into the public treasury under the rule of *Tallman* v. *Lewis.* So, to this extent, the cross-complaint of the defendants stated a cause of action, and the demurrer should have been overruled.

B. *The Claim of Repeal.* The plaintiff, New, claims that by implication all of § 11606 of Pope's Digest has been repealed by one, or certainly by the combined effect of all, of the following:

(1) Act 329 of 1941, providing for a method of examination of teachers and the issuances of certificates;

(2) Section 6 of Act 319 of 1941 providing for examination of contracts by the chief county official;

(3) The proviso in paragraph (L) of § 18 of Act 327 of 1941, reading: "that salary warrants to teachers or principals shall not be countersigned unless such teacher or principal is legally certified to teach . . ."

Plaintiff argues that the combined effect of these acts is to say that if he received his warrant, then all other provisions were waived, and therefore the concluding sentence of § 11606 has been impliedly repealed.

We do not agree with plaintiff's contention. As previously pointed out, this concluding sentence of § 11606, as hereinbefore quoted, has been the law in one way or another since 1875, and should not be considered as repealed merely by implication. Repeals by implication are not favored. See *C., R. I. & P. Ry. Co.* v. *McElroy,* 92 Ark. 600, 123 S. W. 771; *Babcock* v. *Helena,* 34 Ark. 499; *Coats* v. *Hill,* 41 Ark. 149; *Carpenter* v. *Little Rock,* 101 Ark. 238, 142 S. W. 162; and cases collected in West's Arkansas Digest "Statutes," § 158. There is no provision in any of the acts mentioned repugnant to the con-

cluding sentence of § 11606, Pope's Digest; and none of the acts mentioned is sufficiently broad to constitute a recodification of the entire school laws. (See *C., R. I. & P. Ry. Co.* v. *McElroy, supra*). So, we hold that the concluding sentence of § 11606 of Pope's Digest was in full force and effect at all times herein involved.

C. *The Claim of Voluntary Payment.* Plaintiff argues in his brief that any payment the district made him was a voluntary payment, and cannot be recovered by the district under the rule that when a person, without mistake of fact or fraud, duress, coercion, or extortion, pays money on a demand which is not enforceable against him, the payment is deemed voluntary and cannot be recovered. This is known as the rule of voluntary payment. To sustain this rule, plaintiff cites a number of authorities, including our own cases of: *Larrimer* v. *Murphy,* 72 Ark. 552, 82 S. W. 168; *LaFayette* v. *Merchants' Bank,* 73 Ark. 561, 84 S. W. 700, 68 L. R. A. 231, 108 Am. St. Rep. 71; *Vick* v. *Shinn,* 49 Ark. 70, 4 S. W. 60, 4 Am. St. Rep. 26; *Ritchie* v. *Bluff City Lbr. Co.,* 86 Ark. 175, 110 S. W. 591. These cases do not apply, because the rule—that a voluntary payment cannot be recovered—does not apply to governmental subdivision. In 48 C. J. 738-9, in discussing voluntary payments, the rule is stated: "The rule that voluntary payments cannot be recovered back applies to payments by a private individual or corporation to the United States, state, county, town, city, or other public corporation, or to an officer thereof as such. On the other hand, . . . the general rule is that, where a wrongful payment is made by the agent or officer of a public corporation, without authority therefor, it is not voluntary payment by the corporation, and may be recovered back by it, . . ."

Cases from many jurisdictions are cited to sustain the statement. In 40 Am. Juris. 822, it is stated: ". . . that a voluntary payment by an officer or agent of the government does not have the same effect as if made by an individual in his own right, so the government is not barred from setting up a claim which it might have presented as a counterclaim." See, also, *Common School District* v. *Twin Falls Bank,* 50 Idaho 711, 4 Pac. 2d 342,

where it was held that voluntary payments illegally made by a school district might be recovered.

Further elucidation on this point seems unnecessary. We hold that the rule that voluntary payments cannot be recovered does not apply in a case like this, where it is alleged that the money was expended from the public treasury in direct violation of the statutory provisions.

III. *Reserved Questions.* In discussing the district's cross-complaint here, we limit all remarks to so much of the allegations of the cross-complaint as covered the period of time in which it was alleged that New had no license, that is, from September 14th to December 12th. This does not imply that all of the other allegations are without merit, or that any of them possesses merit. We are holding that the demurrer should have been overruled. Likewise, we have given no consideration to the issue of ratification. That is a matter of defense. It is also well to point out that this case arose prior to Act 136 of 1943, so that act is not involved. With both demurrers overruled, the parties are free to assert all possible defenses.

The judgment of the lower court is reversed on both direct appeal and cross-appeal, and the causes are remanded to the circuit court for further proceedings not inconsistent with this opinion.

McHANEY and HOLT, JJ., dissent as to reversal on direct appeal.

ROBINS, J., concurring. I concur in the result reached by the majority in this case, but I cannot agree with all that is said in the opinion.

The allegation in the counter-claim of appellants to the effect that appellee obtained the contract to teach by knowingly misrepresenting his status to the directors was sufficient to state a cause of action on the part of the district to recover back money alleged to have been thus obtained from it by fraudulent deceit. For that reason I agree that the lower court erred in sustaining demurrer to this counter-claim.

But the majority goes further, unnecessarily, it seems to me, and holds that without any showing of fraud, appellants would be entitled to recover against appellee if they proved that during the period involved appellee did not possess the necessary license.

Under this holding a teacher may, under an honest belief that he has a proper license, do his duty and efficiently teach the children of the district for an entire school year, receive his salary monthly, and then at the end of the year be compelled to return all his salary to the district simply because it develops that his license for some reason is invalid.

Now the legislature has not seen fit to provide that money paid to a teacher who has in good faith done his work as teacher may be recovered back by the district in event the teacher does not possess proper license. No decision of this court is a precedent for the recovery back of money paid a teacher under such circumstances. Most, if not all, of the decisions relied on in support of the majority opinion on this phase of the case were rendered in cases where an unlicensed teacher sought to recover from the district for his services. Those cases, of course, present an entirely different situation from one in which the teacher has been paid and it is sought by the district to recover from the teacher the amount paid him for salary. The plaintiff in any case assumes the burden of showing that he is entitled to the relief sought by him; and an unlicensed teacher seeking to recover for his services is met at the very threshold of his suit by the proposition that the contract on which he seeks to recover is one that is forbidden by law. But such is not the case here. Here the district permitted an unlicensed teacher to teach and now seeks to take back from him the salary that he actually earned.

The state has a right to demand from the citizen honesty and fairness in his dealing with the sovereign; and the state and its governmental subdivisions ought to deal fairly with the citizen. I do not believe that it is fair or honest for a school district, to whose officers the

records showing eligibility of teachers are open and available, to accept the services of a teacher, who believes himself to be eligible and who renders good and faithful service to the district and afterwards seek, on the ground of the technical ineligibility of the teacher, to take away from the teacher the salary that he has earned.

Before a court of last resort promulgates a rule of law not based on statute or precedent the court ought to be able to say that the proposed rule is consonant with ordinary justice between man and man. In my opinion, this cannot be said of the above mentioned rule laid down herein by the majority.