The Honorable Kirk Johnson Prosecuting Attorney Miller County Courthouse Texarkana, AR 75502
Dear Mr. Johnson:
You have submitted a request for an official opinion regarding questions submitted to you by Miller County Judge James Hudson. Additionally, you have requested clarification of another formal opinion we sent you on August 16, 1985. All questions, as you know, involve payment by Miller County for work allegedly performed by certain contractors. Your request for clarification is as to the following two questions:
 1. How should a bill (for services rendered) be legally handled if said bill is presented for the first time for payment in the present year and all revenues and appropriations for the year in which the service was rendered have been totally expended?
 2. What would be the legal consequence of paying a bill, such as mentioned above, out of funds appropriated under the current year's budget, when services were actually rendered in a prior year?
The questions submitted to you by Judge Hudson are the following as paraphrased:
 3. Were the submission of invoices (for work allegedly performed by the contractors) to the County Clerk in October 1985 timely?
 4. Does the failure to obtain competitive bids on the work claimed by the contractors make payment by the County Judge illegal on some or all of the invoices?
 5. Were the contracts for which payment is sought verbal or written, properly authorized by Judge Overstreet and did Judge Overstreet accept delivery of the services on behalf of the County?
 6. Is it legal for the County to pay 1984 invoices if the 1984 road fund appropriations do not have a sufficient balance with which to pay these claims, and no additional appropriation has been properly approved by the Quorum Court for payment of those claims?
 7. Is it legal to pay the 1984 invoices of those contractors from 1985 county revenue?
We enclose Opinion No. 85-185 [EDITORS' NOTE: Opinion 85-185 was not attached.] in which we first responded to Questions 1 and 2 contained herein. In order to clarify the language of that opinion, however, we set out certain fundamental Arkansas law.
Article 12, Sec. 4 of the Arkansas Constitution of 1874 provides:
 The fiscal affairs of counties, cities and incorporated towns should be conducted on a sound financial basis, and no county court or levying board or agent of any county shall make or authorize any contract or make any allowances for any purposes whatsoever in excess of the revenue from all sources for the fiscal year in which said contract or allowance is made; nor shall any county judge, county clerk or other county officer, sign or issue any scrip, warrant or make any allowance in excess of the revenue from all sources for the current fiscal year. . . .
This language was reiterated in Amendment 10 to the Arkansas Constitution.
Several Arkansas cases have construed the cited provisions. In Goodwin v. State, 235 Ark. 457, 563, 360 S.W.2d 490 (1962), the Arkansas Supreme Court held:
 To make a contract in one year to be paid out of the revenues of a succeeding year is a violation of Constitutional Amendment No. 10 (citation omitted).
In our previous opinion, we listed other cases to this same effect, i.e. Stanfield v. Friddle, 185 Ark. 873 876, 50 S.W.2d 237
(1932): Kirk v. High, 169 Ark. 152, 155-156, 273 S.W. 390 (1925); Nelson v. Walker, 170 Ark. 170, 172, 279 S.W. 11 (1926); and Cook v. Shackleford, 192 Ark. 44, 46, 90 S.W.2d 216 (1936).
Specific language is found in Stanfield supra, at 876.
A county may not incur any obligation in any year which exceeds the revenues of that year, and, if this is done, such obligation is void and cannot be paid out of the revenues of the succeeding year.
Numerous other cases hold if a county enters into such a contract, it will be deemed wholly void by the Supreme Court and cannot be paid [out] of the revenues of the succeeding year. Dixie Culvert Manufacturing Co. v. Perry County, 174 Ark. 107, 109, 294 S.W. 381
(1927); City of Little Rock v. White Co. 193 Ark. 837, 839,103 S.W.2d 58 (1937).
The latter case involved an action instituted against Little Rock which contracted for use of equipment while the Court agreed that city revenues for a succeeding year could not be utilized for services rendered in a past year, it found:
 The city could not use this equipment and make contracts for things other than necessary expenses and thereby avoid payment for use of the equipment.
Then, citing an earlier case, the Court stated:
 (I)t is immaterial that the contract was void. Appellee (the City) cannot accept and hold (the plaintiff's) money, also retain the bridges, and at the same time plead the invalidity of the contract in bar or recovery. . . . It has, therefore, been definitely settled by this court that, notwithstanding a contract for the purchase or use of equipment is void, the City cannot retain the property and refuse to make payment
Id. at 841.
This issue was once again dealt with by the Court in McCuiston v. City of Siloam Springs, 268 Ark. 148, 594 S.W.2d 233 (1980). Although it was contended that a city has improperly entered into a contract for construction work because it had failed to get authorization by the city council as statutorily required. [sic] The Court stated the following at page 151:
 Even though (the contract) is an unenforceable contract for lack of authorization it does not preclude recovery on (the theories of unjust enrichment and quantum merit). . . . (Citations omitted.)
. . . These cases, in effect, hold that a void or illegal contract does not necessarily prevent recovery. In other words, a party cannot retain the benefits of a defective contract and at the same time avoid paying for these benefits.
These principles established by the long list of cases cited in McCuiston, supra, were briefly discussed in Little Rock Road Machinery Co. v. Jackson County, 233 Ark. 53, 342 S.W.2d 407
(1961) in an opinion written by Justice Johnson.
At page 56, Justice Johnson wrote:
 It is well settled that a contract with a county which is void because of a restriction against exceeding current revenues does not give rise to any right against the county for the value of the consideration is accepted and used by the county.
He continues by stating the "decisions of this Court have consistently adhered to this rule", however, he cites only one case on that point, Vick Consolidated School District No. 21 v. New,208 Ark. 874, 187 S.W.2d 948 (1945).
The Opinion further funds, in dicta:
 (W)here a contract is void because expressly forbidden by law there can be no recovery either on the contract or on the basis of quantum meruit for benefits conferred by virtue thereof. To hold to the contrary would render this constitutional provision completely useless. Even though the rule here reiterated appears to be harsh, persons who deal with county authorities in Arkansas are charged with notice that such officials are limited in their expenditures and must make their contracts accordingly. Id. at 56-57.
The Jackson County case, supra, has not been overturned or modified subsequently by decision of the Supreme Court. And, its language appears to be directly in conflict with that of the McCuiston, supra, case. However, the McCuiston case better represents the current view of the Supreme Court as it is a 1980 case. Additionally, other cases illustrate the Court has upheld recovery under the theory of quantum meruit for the full contract price. See Smith v. Dandridge, 98 Ark. 38, 135 S.W. 800 (1911); City of Little Rock v. White, supra; Gladson v. Wilson, 196 Ark. 996,120 S.W.2d 732 (1938); Lykes v. City of Texarkana, 223 Ark. 287,265 S.W.2d 539 (1954); and Perry County v. J. A. Riggs Tractor Co., 200 Ark. 304, 139 S.W.2d 46 (1940). As to whether these cases are in irreconcilable conflict, the Court itself must determine.
Arkansas Statutes Annotated 17-1601, 1602 (Supp. 1985) provides:
 It is unlawful for any County official . . . to make purchases with county funds in excess of $5,000, unless the hereinafter method of purchasing is followed. . . .
At the time of the alleged contracts in question, the maximum exempt amount was $2,000. The language of Opinion 85-185 is still applicable in this regard. If the contracts were not considered by the Arkansas courts to be for "personal services" then the formal bidding requirements would had to have been complied with and, if this didn't occur, state law was violated.
Therefore, it is my Opinion that:
 1. Under constitutional and statutory law, a county may not pay for services or goods encountered in one year out of the succeeding year's revenues unless there is sufficient carryover in the budget category in question from one year to the next and the Quorum Court has validly appropriated such monies.
 2. As to the consequences of payment in violation of Amendment 10, the violator is subject to a fine of not less than $500 and not more than $10,000 and "shall be removed from office".
 3. The timeliness of submission of the invoices is answered by our response in #1 above.
 4. Failure to follow state purchasing laws in obtaining a contract make the subsequent contract void or at least voidable.
 5. Authorization by Judge Overstreet and acceptance by Miller County are factual matters of proof to be submitted in a legal action.
 6. Arkansas law does not allow payment of the 1984 invoices from 1985 7. revenues if no funds and appropriation existed.
Therefore, bills may be presented to the County for payment by contractors alleging they have done work which benefited the County. Those bills may not be paid pursuant to the duties imposed upon public officials by Arkansas law. However, the remedy available is for the contractors to sue the County on a theory of quantum meruit and/or unjust enrichment and they may possibly obtain recovery by Court judgment. The quality of work done, whether it was accepted by the County, the benefit which has inured to the County, etc., are all matters of proof to be submitted to the Court so that it can make a decision based on precedent.
As a matter of interest, we point out that if the county budget contained appropriations for road expenditures in the general fund or revenue sharing fund, and monies were carried over from 1984 to 1985 in those funds, road expenditures could be paid from those, not just the county road fund. We reiterate, however, that a proper appropriation would have had to exist in the other two funds mentioned for legal payment to occur.
The foregoing opinion, which I hereby approve, was prepared by Special Counsel to the Attorney General R.B. Friedlander.