FOWLKES v. WILSON.

4-7064                                                171 S. W. 2d 958

Opinion delivered May 24, 1943.

*Byron Goodson* and *Gordon B. Carlton,* for appellant.

*Abe Collins,* for appellee.

*Ross Mathis, amicus curiae.*

McHANEY, J. Appellants are the directors of School District No. 50, in Sevier county. Appellee is a teacher and taught the school in said district during the school year 1941-1942. Under date of March 13, 1941, the parties entered into a written contract for appellee to teach a term of eight or more months of school, provided funds are available for such term, commencing October 6, 1941, at a salary of $70 per school month. .One paragraph thereof provides: "Said directors further agree that all steps required or allowed by law to be taken by said district and its officers, to secure the payment of teachers' wages, shall be so had and taken promptly, and the requirements of the law, in favor of the teacher, complied with by said district."

Appellee taught nine months and received a salary of $70 per month, or a total of $630. Thereafter she brought this action for a writ of mandamus to compel appellants as directors to execute and deliver to her a school warrant for an additional $82 which she alleged was due her under the provisions of act 319 of 1941. Appellants defended below and urge here that the portion of said act 319 which authorizes the "bonus" is unconstitutional and void and that the contract with appellee was executed on March 13, 1941, and that said act 319 was approved and became effective, if at all, on March 26, 1941. The trial court awarded the writ prayed, and this appeal followed.

The short title of act No. 319 of 1941 is set out in § 1, as: "The Arkansas Teachers' Salary Law." Section 2 is the definitive section. The term "base year" is defined in 2 (c) "to be the fiscal year 1939-40." The term "base revenue of the school district" is defined in 2 (d) "to be the total revenue receipts excluding federal and state vocational funds accruing to said district during the base year." Section 3 of said act is the section here involved and reads as follows: "On or before July 1, 1941, the board of school directors of each school district in the state, assisted by the local superintendent, the chief county school officer, and the State Budget Director, or someone designated by the State Board of Education shall determine the base revenue and the per-

centage of base revenue which was spent for teachers' salaries. For the school year beginning July 1, 1941, and each year thereafter, it shall be the duty of each school board to spend not less than the same percentage of the base revenue or any part thereof available, for teachers' salaries which was spent therefor during the base year; except that no district shall be compelled to spend more than sixty-five (65%) per cent. of its base revenue on teachers' salaries, provided that state and federal vocational aid shall not be counted in determining the base revenue. Moreover, not less than seventy-five (75%) per cent. of all revenue receipts, over and above the base revenue, accruing to each school district in each fiscal year after June 30, 1941, shall be used in that year for the payment of teachers' salaries, provided, however, that this shall in no way effect or apply to that portion of revenue or millage which has been set aside in any district prior to the passage of this act to meet its bonded obligations. Provided further that any moneys received from the Teacher Salary Fund hereinafter created shall not be counted as new revenue as herein used. When such a district has discharged its bonded obligations, it shall be bound thereafter by all of the provisions of this act.''

It will be noticed that this section specifically applies to the school year beginning July 1, 1941, and each year thereafter. It will also be noticed that no district shall be required to spend more than 65 per cent. of its base revenue on teachers' salaries, but is required to spend for said purpose, ''not less than seventy-five per cent of all revenue receipts, over and above the base revenue, accruing to each school district in each fiscal year after June 30, 1941,'' except that millage which has been set aside to pay bonded indebtedness.

While appellants say that § 3 of the act is unconstitutional and void, they do not point out any provision of the Constitution that prohibits such legislation and we do not find any. The argument seems to be directed to the charge that it is so vague and uncertain as to render it invalid, but we cannot agree with that contention. It

appears to us to be quite definite and certain that the Legislature meant to require school districts to spend more of their revenue on teachers' salaries, at least they must pay teachers not less than the same percentage of the base revenue—which was spent therefor during the base year, and in addition, in case of an increase of revenue in any fiscal year over the base year, they must pay teachers 75 per cent. of such increase. In appellant district, the undisputed facts disclose the following condition:

| | |
|---|---|
| Accrued revenue for 1941-42 | $1,294 |
| Revenue for base year (1939-40) | *1,091* |
| Increase over base year | 203 |
| 75 per cent. of $203 (the increase) | 152 |
| Salary base year | 560 |
| Ear-marked for salary 1941-42 | 712 |
| Salary paid 1941-42 | 630 |
| Balance due teacher as bonus (act 319) | 82 |

We see no difficulty in determining the amount of revenue accruing to any school district during the fiscal or school year. As we understand it, collections made by the collector during 1943 are credited to the school districts for the school year beginning July 1, and all settlements are made during that year, as also the special tax collectors, prior to June 30. So the accrued revenue for the school year is definitely known. In this case, it was determined sometime in June, 1942, that appellee had not been paid the full salary required by said act and appellants were requested to issue a warrant to her for the balance due, which they refused to do. We think the act is not void or unworkable for uncertainty.

As to the contention that the contract was made before the effective date of the act, and that, for this reason, it does not apply, but little need be said. The express language of the act makes it applicable to all contracts in all districts for the school year 1941-42. The contract was not to be performed until after the passage of the act, and we do not consider it to be retroactive as to this contract, but is prospective in its operation, applying to all contracts for 1941-42 and subsequent

years. The revenue here involved is school revenue, arising by virtue of legislative enactments, and are public funds. We have many times held that the Legislature has plenary power in the management and operation of school districts. *Wheelis* v. *Franks,* 189 Ark. 373, 72 S. W. 2d 231.

We conclude, therefore, that the Legislature had the power to require school districts to devote a certain percentage of their revenue to the payment of teachers' salaries; that it has done so under the act in question which is not void for constitutional reasons, for uncertainty, or otherwise; and that the judgment should be affirmed.

McFADDIN, J., dissenting. The desire for school teachers to receive more compensation is certainly to be encouraged. It is a matter of common knowledge that for many years school teachers in Arkansas have received less compensation than any other professional group. This may not be a matter of judicial knowledge, still it is knowledge common to many citizens. Furthermore, to the school teachers we owe more than we can ever pay. "As the twig is bent, so the tree is inclined"; and what person in middle life today cannot look back on some God-fearing school teacher as the example by which a young life was guided and inspired. So the purpose of act 319 of 1941 is laudable.

But courts are not to legislate: they are to adjudicate. And a careful study of the entire act No. 319 convinces me that no language in the act says anything about paying a bonus at the end of the year to any teacher; and the act must be construed as the Legislature passed it and without "judicial legislation" to carry out desires not found in the act. Several reasons seem convincing that the Legislature had no intention of allowing a bonus to be paid to a teacher at the end of the year. Some of these reasons are:

1. The Legislature must have known that no school district could have its receipts and expenses in exact balance. If the Legislature had intended that a bonus

be paid to the teachers at the end of the year, then the Legislature should have so stated.

2. Section 5 of the act requires the directors of a school district to adopt a budget and prohibits the district from making any change in the budget once it is adopted. The act says: "After such budget is approved, no changes shall be made therein by the Board of Directors or any other school officials unless such revision be approved by the State Budget Director." To pay a bonus to a teacher at the end of the year is at variance with the budget requirements, and nothing is alleged or shown about any state official authorizing any change in the budget of the school district in the case at bar.

3. In § 4 of the act, there is a provision for the salary of teachers "increased by provisions of law for the school year next succeeding the date of termination fixed herein." This language strongly indicates that any surplus of one year is not to be distributed as a bonus for that year, but is to go into the fund for the next year to swell the teachers' salaries of the said following year. Furthermore, in § 5 of the act, in speaking of the budget for the school district, it is stated that the district is "to prepare, no later than August 1 of the current fiscal year, a budget showing actual revenue . . . and anticipated revenue." It is fair to presume that a district would make a contract to pay a teacher a fixed amount based on available funds on hand, and then if any funds were left from one year, it would go into the next year's account and would be used in making contracts for the teachers' salaries of the said following year. That seems far more logical and far better for teachers and school districts than to read this so-called "bonus" idea into the law when there is no expression in the act that would indicate that a bonus was to be paid.

4. In §§ 7 and 10 of the act, the law is specific as to what each *district* shall receive. If the act had intended an increase for the teachers by a bonus at the end of the year, the act would have been as specific in that regard as it is in the district matters in §§ 7 and 10 of the act.

Therefore, believing that the idea of the bonus is not within the language of the act, and that any surplus left from one year is to go into the teachers' fund for the next year and not to be distributed as a bonus, I respectfully dissent from the majority opinion in this case; and I am authorized to state that Mr. Justice SMITH joins me in this dissent.