The Honorable Jim Argue, Jr. State Senator 5300 Evergreen Drive Little Rock, Arkansas 72205-1814
Dear Senator Argue:
I am writing in response to your request for an opinion on five questions concerning Act 1768 of 2003, which amended A.C.A. § 6-17-1001 regarding minimum teacher salaries. You note that Act 1768 amended this code section "to provide that a teacher's experience for purposes of salary and benefits be his or her total years in any school district in which he or she is currently employed." You pose the following five questions concerning this act:
 1. Does Act 1768 of 2003 apply to teachers currently employed by a school district or only to teachers hired by a district after the effective date of the act?
 2. A teacher has been employed by an Arkansas School District, District "A," for three (3) years. When hired the teacher was given experience credit for five (5) of the ten (10) years the teacher was previously employed by District" B," also an Arkansas school district. Would the teacher's experience for salary purposes with District "A" be eight (8) years or thirteen (13) years?
 3. If your answer under Question 2 is thirteen (13) years, would the salary in the contract for the 2003-2004 school year be the legal obligation of the school district if the contract was entered into prior to the effective date of Act 1768 and the teacher's salary was based on eight (8) years experience? Does Act 1768 require the contract be amended to provide for a salary based on thirteen (13) years experience?
 4. If your answer under Question 2 is thirteen (13) years, would District "A" be in compliance with Act 1768 if the district only gives experience credit for eight (8) years, but the district's salary schedule provides a salary to the teacher that meets or exceed the minimum salary required under § 6-17-1001 for a teacher with thirteen (13) years of experience?
 5. Would the application of Act 1768 be any different for a school district with teachers' contracts negotiated as a result of collective bargaining?
RESPONSE
In my opinion the answer to your first question is that Act 1768 applies to all teachers employed by a school district, whether employed prior to or after the effective date of Act 1768. In my opinion the answer to your second question is thirteen years. In response to your third question, in my opinion Act 1768 requires that teachers be paid based upon their total years of experience notwithstanding a contract that was entered into prior to the effective date of Act 1768. As such, the answer to the first part of your third question is "no," the contract amount does not represent the legal obligation of the school district if it is based upon less than the teacher's total years of previous experience. In response to the second part of your third question, although nothing in Act 1768 requires the amendment of contracts, districts may wish to consult with legal counsel or officials at the Department of Education for guidance on this issue. In my opinion the answer to your fourth question is "no," such a district would not be in compliance. Act 1768, in my opinion, requires that a teacher be given credit for his or her total years of experience in any school district in the state, and paid pursuant to those years of experience in accordance with the salary schedule of the then-employing school district. In my opinion the answer to your fifth question is "no."
Question 1- Does Act 1768 of 2003 apply to teachers currently employed bya school district or only to teachers hired by a district after theeffective date of the act?
The pertinent section of Act 1768 is Section 1, which amends A.C.A. §6-17-1001 to insert a new section (a)(2) which now provides: "Beginning with the 2003-2004 school year, the teacher's experience for purposes of salary and benefits shall be his or her total years in any school district in the state, and shall not be based on only the years in the district in which he or she is currently employed." In my opinionAct 1768 of 2003 applies to all existing teachers and not just to those newly hired by the district. I reached this same conclusion in recently issued Op. Att'y Gen. 2003-181, a copy of which is enclosed. My reasons for that conclusion are expressly fully in Opinion 2003-181.
Question 2 — A teacher has been employed by an Arkansas School District,District "A," for three (3) years. When hired the teacher was givenexperience credit for five (5) of the ten (10) years the teacher waspreviously employed by District "B," also an Arkansas school district.Would the teacher's experience for salary purposes with District "A" beeight (8) years or thirteen (13) years?
In my opinion, consistent with my answer to your first question and beginning with the 2003-2004 school year, the answer is thirteen (13) years. See again, Op. Att'y Gen. 2003-181.
Question 3 — If your answer under Question 2 is thirteen (13) years,would the salary in the contract for the 2003-2004 school year be thelegal obligation of the school district if the contract was entered intoprior to the effective date of Act 1768 and the teacher's salary was basedon eight (8) years experience? Does Act 1768 require the contract beamended to provide for a salary based on thirteen (13) years experience?
In my opinion Act 1768 requires that teachers be paid based upon their total years of experience notwithstanding a contract that was entered into prior to the effective date of Act 1768. As such, the answer to the first part of your third question is "no," the contract amount does not represent the legal obligation of the school district if it is based upon less than the teacher's total years of previous experience.
You have not stated the exact date of the entry of any such contracts, but your question assumes that the date is prior to the effective date of Act 1768. Act 1768 of 2003 was passed by the General Assembly and signed by the Governor on April 22, 2003, but without an emergency clause, did not become effective until July 16, 2003. See Op. Att'y Gen. 2003-119. Act 1768 clearly expresses its intention that it apply to the 2003-2004 school year. A question similar to your third question was addressed in both Fowlkes v. Wilson, 205 Ark. 895, 171 S.W.2d 958 (1943) and Fennelland Reeves v. School District No. 13, 208 Ark. 620, 187 S.W.2d 187
(1945). At issue in each case was Act 319 of 1941, which required school districts to pay teachers a certain percentage of base revenue and a certain percentage of any increase in revenue above that base revenue. The court stated that:
 As to the contention that the contract was made before the effective date of the act, and that, for this reason, it does not apply, but little need be said. The express language of the act makes it applicable to all contracts in all districts for the school year 1941-42. The contract was not performed until after the passage of the act, and we do not consider it to be retroactive as to this contract, but is prospective in its operation, applying to all contracts for 1941-42 and subsequent years. The revenue here involved is school revenue, arising by virtue of legislative enactments, and are public funds. We have many times held that the Legislature has plenary power in the management and operation of school districts.
Fowlkes, supra at 898-99.
In the second case above-cited, Fennell and Reeves, supra, the court addressed a similar argument by stating:
 Another argument made by appellees to affirm the decree is that the acceptance by appellants of the sum of $85 per month for teaching during the year 1942-43 amounts to an accord and satisfaction and estops them from asserting a claim for additional compensation under said Act 319 for said year. In the first place, we do not think the evidence justifies the assumption that appellants accepted their $85 warrants in full pay of the amount due them. In the second place, the sum due each of them, in addition to the $85 per month paid them, did not arise by virtue of a contract, but by operation of law — by 3 of Act 319 of 1941, already quoted. In Fowlkes v. Wilson, supra, with reference to a similar contention, we said: "It will be noticed that this section specifically applies to the school year beginning July 1, 1941, and each year thereafter. It will also be noticed that no district shall be required to spend more than 65 per cent. of its base revenue on teachers' salaries, but is required to spend for said purpose, `not less than seventy-five per cent. of all revenue receipts, over and above the base revenue, accruing to each school district in each fiscal year after June 30, 1941,' except that millage which has been set aside to pay bonded indebtedness."
 In other words, those provisions of said act will be read into any contract made by the school board with teachers, and there is no way to apply the principles of accord and satisfaction or estoppel in such cases.
Fennell and Reeves v. School District No. 13, supra, at 624. (Emphasis added).
In my opinion, therefore, in answer to the first part of your third question, school districts will be obligated to pay teachers for total years of experience beginning with the 2003-2004 school year despite the fact that contracts may have been executed prior to the effective date of Act 1768.
In response to the second part of your third question, nothing in Act 1768 requires the amendment of teachers' contracts. Districts may wish to consult with the counsel to whom they ordinarily look for legal advice, or to officials at the Department of Education, as to whether the amendment of teacher contracts is necessary or advisable.
Question 4 — If your answer under Question 2 is thirteen (13) years,would District "A" be in compliance with Act 1768 if the district onlygives experience credit for eight (8) years, but the district's salaryschedule provides a salary to the teacher that meets or exceed theminimum salary required under § 6-17-1001 for a teacher with thirteen(13) years of experience?
It is my opinion that the answer to this question is "no." It is helpful in answering this question to set out the entire subsection (a) of A.C.A. § 6-17-1001, as amended by Act 1768:
 (a)(1) The board of directors in each school district in the state shall pay their teachers upon a salary schedule which has annual increments for education and experience and which provides for a base salary, a minimum salary for a teacher with a master's degree, and at least fifteen (15) years of experience as described in this section.
 (2) Beginning with the 2003-2004 school year, the teacher's experience for purposes of salary and benefits shall be his or her total years in any school district in the state, and shall not be based on only the years in the district in which he or she is currently employed.
The underlined language was added to the subsection by Act 1768. The pre-existing subsection, now (a)(1), requires each district to pay its teachers upon a salary schedule for the district. The language added by Act 1768, in subsection (a)(2), in my opinion contemplates that the now-required total years of experience will be credited to the teacher on the particular salary schedule of the then-employing district. This is why, in my opinion, the legislature inserted the language in question into subsection (a) of A.C.A. § 6-17-1001 (which governs salary schedules). If the intention of the legislature had been merely to somehow assure a minimum salary for total years of experience in any district, it could have easily amended other provisions in § 6-17-1001
pertaining to minimum salaries.
Question 5- Would the application of Act 1768 be any different for aschool district with teachers' contracts negotiated as a result ofcollective bargaining?
It is my opinion that the answer to this question is "no." Nothing in Act 1768 or the applicable subchapter (A.C.A. § 6-17-1001 to -1004) exempts districts with contracts negotiated as a result of collective bargaining. Compare A.C.A. § 6-17-2105 (Supp. 2001) (exempting school districts engaged in agreed-to collective bargaining from the provisions of A.C.A. §§ 6-17-2103 and -2104 regarding salary increases).
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General